Levi E. Waller and David J. Waller, Executors of the last Will and Testament of Rev. David J. Waller, deceased, and Julia Waller, Appellants, v. The Kingston Coal Company.

*Lease—Mines and mining—Accounting—Royalties—Interest.*

Where a coal lease provides for an annual rental, payable quarterly, and a royalty for coal mined in excess of a specified quantity, and in the course of dealing between the parties the lessor frequently accepted royalties long after they were due, without demanding interest on the same, and finally gave a receipt "in full payment for coal rent in excess of minimum," and it appears that the receipt was not given under a mistake as to any matter of fact, the representatives of the lessor cannot, after his death, recover interest on the royalties which had accrued and were paid prior to the giving of the receipt.

Argued April 11, 1899. Appeal, No. 135, Jan. T., 1899, by plaintiffs, from decree of C. P. Luzerne Co., Oct. T., 1896, No. 4, on bill in equity. Before STERRETT, C. J., GREEN, MITCHELL, DEAN and FELL, JJ. Affirmed.

Bill in equity for an account.

ALBRIGHT, P. J., of the 31st judicial district, specially presiding, filed the following opinion:

#### FACTS FOUND.

1. By indenture dated June 12, 1872, the said Rev. David J. Waller, who is now deceased, and said Julia Waller, his wife, called parties of the first part, leased and to mine let unto Isaac S. Waterman and Thomas Beaver, called parties of the second part, all the coal in and under certain lands in Plymouth township, in said county, and in consideration thereof said lessees by said indenture covenanted among other things as follows:

(*a*) " That they will pay to the said parties of the first part the annual rentals and in manner as follows, to wit: the annual rental of nine thousand dollars, payable in equal quarterly instalments of two thousand two hundred and fifty dollars each on the first days of July, October, January and April in each year, except when the said parties of the second part, their heirs, executors, administrators or assigns shall be unable to mine the quantity of coal hereinbefore agreed to be paid for from the lands of said first party, in any one year, in consequence of the occurrence of a serious fault in the mines upon said lands, or of a strike of employees of said second party, or of the destruction of their works by fire or otherwise, and in that event said second party shall not be bound during the continuance of such or other obstruction unavoidable to said business to pay for more coal than by the use of due diligence they are able to mine from said premises of said first party. It being understood that said obstructions shall be removed as soon as practicable by said second parties hereto. Rent to commence and be calculated from April 1, A. D. 1871, to be distrained for by the said parties of the first part, their legal representatives and assigns, if deemed necessary. For which payments well and truly made as aforesaid, being the annual rentals at the rate of twenty-five cents per ton for each and every ton of coal of twenty-two hundred and forty pounds, of a size which will pass over a screen having a five-eighths inch mesh, mined from the demised premises, the said parties of the second part may mine and remove from the premises aforesaid coal as follows, to wit: thirty-six thousand tons of coal of the size aforesaid annually. All the coal of the size aforesaid mined and removed in any year in excess of the quantity aforesaid shall be paid for by the said parties of the second part quarterly at the rate aforesaid, and in case less coal is mined than the quantity aforesaid and removed in any year, such deficiency in coal may be mined and removed in any subsequent year during the continuance of this lease without further charge.

(*b*) " That books of account shall be kept by said parties of the second part in which shall be entered a just and true account of all coal which shall be mined from the demised premises, which books and accounts shall at all times be open and free of access to the said parties of the first part, their

legal representatives and assigns, and copies of such books and accounts shall be furnished to said parties upon their reasonable request for the same.

(c) "That the said parties of the second part shall deliver annually to said parties of the first part, their legal representatives and assigns, at the colliery or operation to be conducted upon the demised premises or in connection therewith, one hundred tons of prepared coal at cost of mining for which no royalty shall be charged."

2. Under said indenture said lessees mined and removed coal and paid rent. On June 23, 1877, they assigned to George F. Geisinger and Daniel Edwards an undivided three sixteenths of their rights and estate under said indenture, and on the same day said lessees and their said assigns transferred all their said rights and estate to the Kingston Coal Company, Limited, an association under the act of June 2, 1874, composed of said Waterman, Beaver, Geisinger and Edwards. Said association mined and removed coal and paid rent and royalty until September, 1883, when it transferred its rights and estate in said premises to the Kingston Coal Company, a corporation under the laws of this state, incorporated August, 1883. Said corporation mined and removed coal and paid rent and royalty from the time of said transfer to it to the time of the filing of the bill in this case, July 28, 1897, paying to said Rev. David J. Waller during his lifetime, and after his decease to the plaintiffs in this proceeding.

3. Said "annual rent" of $9,000 was all paid; $2,250 was paid at the end of each quarter (the first quarter beginning April 1, 1871) to the time of the commencement of this proceeding.

4. At various periods there was mined an excess of said minimum quantity of 36,000 tons a year; that is, a quantity beyond the aggregate at the rate of 36,000 tons a year calculated to a given period. In this proceeding a quantity not exceeding the aggregate at the rate of 36,000 tons a year is termed the minimum and compensation therefor rent; any quantity beyond that is called excess, and what is owing therefor royalty. The first excess occurred in the first quarter of 1877; the last in the third quarter of 1894.

5. All the excess mined before the institution of this proceed-

ing was paid for, but the various quantities in excess of said minimum mined during the lifetime of Rev. D. J. Waller were not paid for at the end of the various quarters during which they were produced as stipulated in the lease (first finding). (*a*) Plaintiffs' demand is exclusively for various sums alleged to be due as interest on what was owing for excess at the end of several quarters and not paid. It is stated to be a demand for a general balance, charging interest for excess not paid for at the end of the proper quarter and crediting the various sums paid as of the dates when paid, according to the rules governing partial payments, calculating according to the method just stated, there was due plaintiffs on October 1, 1894, the sum of $6,840.

6. At or near the end of each quarter the lessees paid the $2,250 rent, or as much thereof as remained unpaid, by check sent by mail, accompanied by a statement; at the end of the quarters the whole of the $2,250 was seldom all still owing; said statements set forth that lessor had been furnished coal above what he was entitled to under the lease, or that money had been paid to or for him during the quarter in question.

7. Rev. David J. Waller receipted for such excess in full to January 1, 1889. To make plain the date to which said receipt relates and the receiptor's understanding respecting excess and sums paid therefor, the following accompanying correspondence is given with the receipt:

"KINGSTON, PA., Feb. 8th, 1889.
"REV. D. J. WALLER,
        "Bloomsburg, Pa.

"Dear Sir: We enclose herewith our check to your order for $6,078.20, in full payment of coal rent due you to January 1, 1889. We have deducted from the amount due you for royalty $371.35 for coal shipped you in excess of the hundred tons per year to which you are entitled under the lease. We enclose statement of this coal. Please sign and return enclosed receipt.
                "Yours very truly,
                        "D. EDWARDS, President."

Appended to the letter the following receipt:
"Received Bloomsburg, Pa., Feb'y 9, 1889, from the Kingston Coal Company, $6,078.20 in full payment for coal rent in

excess of minimum to be paid under lease of Isaac S. Waterman and Thomas Beaver, dated June 12th, 1872.

"D. J. WALLER.

"BLOOMSBURG, PA., Feb. 9th, 1889.
"DANIEL EDWARDS, ESQ.,
    "President, &c.
"Dear Sir: Your favor covering check for $6,078.20 was most welcome. Please accept my hearty thanks; in looking at the accompanying statement I do not fully understand the last item viz. 742.14 tons at 50 cts. I will enclose it. It looks as though it might be an oversight.

"Yours truly,
"D. J. WALLER."

Statement to which above letter refers:

"KINGSTON, Feb. 8th, 1889.
"Rev. D. J. Waller in account with the Kingston Coal Company.
    "1889.
"Jan'y 1, By coal due him under lease to Jan'y 1889, 100 tons per yr., 1775 tons. To coal shipped to him to Jan'y 1, 1889, 2517.14 tons. Balance due Kingston Coal Company, 742.14 tons. 742.14 tons at 50 cents, $371.35."

"FEBRUARY 12, 1889.
"REV. D. J. WALLER,
    "Bloomsburg, Pa.
"Dear Sir: Your favor of 9th inst. is at hand. The statement you return we enclose herewith and desire to say in explanation that the 742.14 tons at 50 cents is charged for coal in excess of the amount due you per year under lease. The lease requires there shall be delivered to you annually at the colliery 100 tons prepared coal at cost of mining. As shown by the enclosed statement you have had to Jan'y 1, 1889, 742.14 tons more than the amount to which you are entitled, and we therefore charged for this difference between the cost of mining and the regular price. We trust this will be satisfactory.

"Yours very truly,
"D. EDWARDS.
"General Superintendent."

8. Said receipt was not given under mistake as to any matter of fact. The sum receipted for did pay for all coal mined before January 1, 1889, but as above stated the excess was not always paid to the end of each quarter when it was demandable. Facts bearing upon said main statement are these: Rev. Mr. Waller was exceptionally intelligent and capable and attentive regarding business matters; he occasionally called at the company's office and inquired about the state of his account and statements showing its condition taken from the books were given to him; such inquiries related to excess, because each quarter he received by mail a statement of coal and cash charged to him and a check for what was owing on the $2,250 rent; he had access to the books and looked at them sometimes; it is not proved that any false statement was rendered to him or that he ever asked for a statement and was denied.

9. The allegations in the bill that the quarterly statements rendered were false and misleading; that by reason of the omission therefrom of excess of coal mined the lessor was kept in ignorance of such excess, and that the conduct of the lessees was in fraud of the lessor's rights is not established by evidence; none of said averments is proved by the books, statements or correspondence between the parties; no witness has testified to anything material in this reference, except results and inferences from defendant's books; the assertion that the lessees led Rev. D. J. Waller to infer that no excess was mined is rebutted by what is stated in the last finding and by the fact that on several occasions before February, 1889, he received large sums, not appearing on the quarterly statements, and which he knew were paid on excess ($3,000 was thus paid in the third quarter of 1883 by the coal company, limited, and by defendant, $2,000 in second quarter of 1884 and $6,518.85 in fourth quarter of 1888, the advances for which notes of lessor were given, that is $5,000 on December 6, 1884, and $2,000 on May 15, 1885, are also borne in mind. As to said allegations of bad faith the answer is responsive to the bill and denies said allegations. That denial is not overcome by adequate evidence.

10. Rev. David J. Waller knew that payment for the excess was demandable at the quarter day next after it was taken out. A contrary view would have to rest on the idea that he was ignorant of an important covenant in his indenture, or that he

thought that the excess was payable at the pleasure of the lessees or not until the estate granted had expired by the exhaustion of the coal, none of these would be reasonable surmises even.

11. The purpose of Rev. David J. Waller was not to exact interest upon what was due for excess, but to accept the principal in discharge of the debt. He either knew when the mining in excess occurred, or as he was aware he might have learned it by inquiry or request for an account. First fact (*b*).

12. The transaction of February 9, 1889, was in effect an account rendered by the lessee and accepted by the lessor; it was consummated by the payment of the balance agreed upon; the receipt stands as an acquittance according to its terms. It is a valid answer to the demand for an account as to matters before January 1, 1889.

13. After January 1, 1889, there was no receipt in full given either by the lessor in his lifetime or by the plaintiffs after his decease; when the defendant on August 11, 1894, paid $2,701.99 on excess it desired the receipt therefor to be in full, but plaintiffs refused to sign such receipt; L. E. Waller struck out the word full in the receipt sent by defendant.

14. Coal was mined from said lands and rent and royalty paid on the same, from January 1, 1889, to December 31, 1894, inclusive, as follows:

|  |  |  | MINED. | PAID. |
|---|---|---|---|---|
| 1st | qr. | '89, | 8,329–11 | $2,250.00 |
| 2d | " | " | 11,543–15 | 2,250.00 |
| 3d | " | " | 13,772–11 | 2,250.00 |
| 4th | " | " | 8,341–11 | 2,250.00 |
| 1st | " | '90, | 2,594–00 | 2,250.00 |
| 2d | " | " | 7,819–04 | 2,250.00 |
| 3d | " | " | 9,585–01 | 2,250.00 |
| 4th | " | " | 6,770–14 | 2,250.00 |
| 1st | " | '91, | 6,720–19 | 2,250.00 |
| 2d | " | " | 11,961–12 | 2,250.00 |
| 3d | " | " | 2,705–02 | 2,250.00 |
| 4th | " | " | 2,734–15 | 2,250.00 |
| 1st | " | '92, | 3,759–19 | 2,250.00 |
| Amount carried forward. | | | 96,603–34 | $29,250.00 |

| | | | MINED. | PAID. |
|---|---|---|---|---|
| Amount brought forward. | | | 96,603–34 | $29,250.00 |
| 2d | " | " | 9,026–08 | 2,250.00 |
| 3d | " | " | 10,480–14 | 2,250.00 |
| 4th | " | " | 9,595–00 | 2,250.00 |
| 1st | " | '93, | 13,002–00 | 2,250.00 |
| 2d | " | " | 11,992–08 | 2,250.00 |
| 3d | " | " | 12,244–01 | 2,250.00 |
| 4th | " | " | 11,113–18 | 2,250.00 |
| 1st | " | '94, | 11,555–00 | 2,250.00 |
| 2d | " | " | 23,259–18 | 4,951.99 |
| 3d | " | " | 18,122–13 | 4,530.67 |
| 4th | " | " | 9,520–17 | 2,380.21 |
| | | | 236,451–11 | $59,112.87 |
| | | | 236,551–11 | $58,752.87 |
| | | | diff. 100 tons. | diff. $360.00. |

Plaintiff's exhibit makes the quantity 92 tons less.

There is no allegation or proof that after 1894, and before the filing of the bill any excess over the minimum was mined. The first excess after January 1, 1889, occurred in the second quarter of 1894; the excess was 10,807–18 tons which was paid by the $4,951.99 ($2,701.99 above $2,250) the second and only other excess during this period was on the third quarter of 1894 (9,122–13 tons) which was paid by the $4,530.67. It is a fact that all excess mined from January 1, 1889, to the date of the filing of the bill in this case was paid, and paid at the time the same was due under the covenants in the indenture.

15. When the coal company, limited, succeeded Waterman & Beaver there was owing to lessor $1,986.67; said company continued the account of its assignor and included said sum in its account. Again when said company, limited, assigned to the Kingston Coal Company the limited company's books showed $5,210.47 to be owing to the lessor; the Kingston Coal Company carried the sum last named to its books and made it a credit item of the lessor in its account with him; this was known to lessor; by its course of dealing with the lessor the defendant made said indebtedness its own upon sufficient consideration. (It would have been liable under the covenants, but that need

not be demonstrated now); said indebtedness entered into said transaction of February 9, 1889, when the receipt in full was given.

### OPINION.

This is a proceeding for an account; the relief prayed is that defendant be decreed to account and second, to pay over the amount found to be owing by it. The answer avers that defendant has fully accounted and owes nothing. No question of jurisdiction has been suggested.

A plea of a stated account or of a settled account is a good bar to a bill of account. A stated account properly exists only where accounts have been examined and the balance admitted as the true balance between the parties without having been paid. When such balance admitted is paid the account is deemed a settled account: Br. Eq. Juris. § 658. Pleas are abolished by the equity rules of 1894; all defenses shall be by answer or demurrer. In substance the answer sets up that an account has been settled. The receipt in full of February 9, 1889, supports that defense. Conceding that the receipt is not to be regarded as a solemn written contract between parties executed and delivered, but the acknowledgment of a party only (Batdorf v. Albert, 59 Pa. 59); it must be held that the receipt has not been overcome by evidence; the prima facie proof established by it has not been contradicted. The only error concerning the receipt urged by plaintiffs' counsel is the matter of interest on the excess. The court has found that the lessor did not intend to exact interest. He accepted the principal tendered to him by the check for $6,078.20 in full discharge of the debt. He could waive the claim for interest. As to claims prior to January 1, 1889, the rights of the plaintiffs are the same as the lessor would possess if he were still living and were suing. If the lessor were seeking to recover interest prior to January 1, 1889, his position would be that of one who accepted payment of an overdue debt, where no interest was contracted for, and who several years afterwards sued to recover interest. Interest is a legal and uniform rate of damages allowed in the absence of any express contract when payment is withheld after it has become the duty of the debtor to discharge his debt: Kesey v. Murphy, 30 Pa. 340; Minard v. Beans, 61 Pa. 441. Where a

balance of an account was paid without any charge for interest the court refused to open the account to support a claim for interest: Consequa v. Fanning, 3 Johns. Chan. 587. The defendant subscribed to the capital stock of a railroad company the amount of subscription to be paid " in such instalments and at such times as the board of directors might lawfully direct." Several calls were made by the directors amounting in the aggregate to the precise sum subscribed, which were all paid by the defendant but not at the time designated in the calls, and receipts given. Nothing was said about interest and no claim made for it until after the whole principal had been paid. Held, that an action would not lie to recover interest on the several amounts specified on the calls for the time they remained unpaid after the day designated for payment by the call : Central R. R. Co. v. Moravia, 61 Barb. 180. Where parties themselves settle their accounts (at regular intervals) without charging each other with interest it is not in accordance with law or equity to go behind such settlements for the purpose of allowing interest in favor of one party against the other, such settlements are considered conclusive unless impeached for fraud or mistake : Chandler v. Bank, 61 Cal. 401. Where there is a stipulation for interest it may be recovered even after the principal debt has been paid ; but it is otherwise where the interest is recoverable merely as damages or as incident to the debt : Chitty on Contracts, p. 959, note *k ;* 11 Am. & Eng. Ency. of Law, 381 ; Gillespie v. Mayor of New York, 3 Edw. Ch. 512. In the case in hand no interest was contracted for. However, I rest the decision of this point on the fact that lessor did not intend to claim interest for arrearages before 1889 ; that his receipt is evidence of that fact ; his previous dealing corroborates that view.

In the bill it is averred that defendant paid said sum in February, 1889, to Rev. David J. Waller, representing the same to be in full of royalty owing for coal produced under the indenture from the date thereof to January 1, 1889 ; that said representation was untrue. That and every other averment alleging bad faith, and that the lessor was kept in ignorance of the quantity mined, are denied in the answer. I fail to find any evidence supporting plaintiffs' contention in those regards, much less the amount of proof required to overcome such de-

nial. Such answer is conclusive in defendant's favor unless it is overcome by the satisfactory testimony of two opposing witnesses, or of one witness corroborated by other circumstances and facts which give to it a greater weight than the answer, or which are equivalent in weight to a second witness: 2 Story's Eq. Juris. sec. 1528; Horton's App., 13 Pa. 67; Burke's App., 99 Pa. 350; Bailie v. Bailie, 166 Pa. 472. Upon this view of the case also it must be held that the receipt of February 9, 1889, remains unimpeached and uncontradicted. When the bill was filed nothing was owing for coal mined after January 1, 1889. As to that the case is plain. Plaintiffs' evidence showed that all accruing after the last named date had been paid at the time the various sums fell due.

Plaintiffs have shown no right to demand an account. I have found the facts and law in my own language, therefore decline to answer defendant's requests.

### CONCLUSIONS OF LAW.

1. Before this bill was filed defendant accounted and paid to the plaintiffs, or to Rev. David J. Waller, deceased, in his lifetime, all its indebtedness demanded or complained of in plaintiffs' bill. ˙

2. Plaintiffs' bill must be dismissed at their cost.

On exception, ALBRIGHT, P. J., filed the following opinion:
As to facts found:

3. This is modified so as to read, " Said annual rent was all paid to January 1, 1889." As defendant is to account from that date, all matters relating to such account are left unadjudged.

5. This, so far as it relates to payments for excess, is to be taken to be limited to the period ending January 1, 1889.

7. This is now corrected by striking out the name "D. J. Waller" at the foot of a receipt and inserting at that point the following: "D. J. Waller signed said receipt and sent it to the company with the following letter."

8. Plaintiffs' counsel have complained of the finding respecting testator's qualifications; that statement is now modified to read: "Rev. Mr. Waller was exceptionally intelligent and was capable and attentive regarding business matters."

11. As there is to be an accounting for the period since Jan

uary 1, 1889, and as payment for excess mined after said date was not made to Rev. Mr. Waller, but to his executors, this finding is restricted to matters occurring not later than January 1, 1889; the court does not now decide the question of interest nor the state of the account since that date.

14. This finding relates to amounts and other matters of fact arising since January 1, 1889. As there is to be an accounting since said date, these matters need not be decided now. The whole finding is stricken out. However, there is error in certain statements by the court; the present reference to these matters is not to be taken as conclusions of fact, but rather as suggestions. It would seem that the first excess after January 1, 1889, was in the second quarter of 1889; the excess then was 1,873–06 tons, for which there was due on July 1, 1889, and not paid then, $468.31 (8,329–11 + 11,543–95 equals 19,873–06 minus 18,000 equals 1,873–06 at 25 cts.); the next excess was in the third quarter of 1889, the excess then was 4,772–11 tons, for which there was due on October 1, 1889, and not paid then, $1,193.12 (13,772–11—9,000 equals 4,772–11 at 25 cts.); the next excess was in the second quarter of 1894, when the excess for the whole period from January 1, 1889, to July 1, 1894, was 10,807–18 tons, which was paid by the $4,951.99; $2,701.99 above $2,250; the next and only remaining excess to the time of the filing of the bill was in the third quarter of 1894, the excess then was 9,122–13, for which $2,280.67 was due on October 1, 1894, and was paid (18,122–13—9,000 equals 9,122–13 at 25 cts.).

Rev. David J. Waller died on December 1, 1893; when he received the last instalment of minimum, that is on October 1, 1893, all the coal mined since January 1, 1889, had been paid for to him; from January 1, 1889, to October 1, 1893, 162,779–05 tons, amounting at 25 cents per ton to $40,699.20, had been mined and all the payments aggregated $42,750. But as above stated the $468.31 and the $1,193.12 demandable under the grant on July 1, 1889, and October 1, 1889, respectively, were not paid when the same fell due.

### OPINION.

The court remains of the opinion that the receipt of February 9, 1889, ackhowledging payment for excess in full to Jan-

uary 1, 1889, is in effect a stated account to the date last named; true, it relates only to the excess, but the accounts shown by both parties establish that the annual rent was paid to January 1, 1889. As said receipt is not impeached and there being no doubt that the annual rent was paid to the time of the date of the receipt, it would not be just to require defendant to account as to matters preceding the date of said receipt. However, upon the facts now found relative to matters since January 1, 1889, defendant must account as to coal mined, payments made, and all matters since said date.

The court does not now decide, nor is it necessary now to decide, whether defendant is chargeable with interest on the sums due for excess on July 1, 1889, and October 1, 1889; in the proceeding to account further facts may appear bearing on that question. However, the defendant is chargeable with such interest, unless it is found that as to transactions after January 1, 1889, interest was waived.

### CONCLUSIONS OF LAW.

The court now declares the same to be the following:

1. The defendant accounted with and paid to Rev. David J. Waller in his lifetime all indebtedness demanded or complained of in the bill that accrued before or on January 1, 1889; said parties settled their accounts to that date; mistake or fraud affecting said settlement has not been shown; as to all claims before that date the prayer of the bill is refused.

2. Defendant shall account with the plaintiffs as to all matters alleged in the bill since January 1, 1889.

November 7, 1898, this matter came on to be heard on exceptions to the court's findings and was argued by counsel, thereupon it is considered that said conclusion as to facts and law be modified as set forth in the conclusions on exceptions hereto appended; further, the prayer of the bill for an account so far as it relates to matters before and on January 1, 1889, is refused, and granted so far as it relates to the period after said date; it is adjudged and decreed that the defendant, within fifteen days from this date, account with the plaintiffs as to coal mined and all transactions since said date under indenture between said Rev. David J. Waller and wife and defendant's assignors, Water-

man & Beaver, made June 12, 1872; the exceptions save as herein and by said appended conclusions sustained are dismissed.

*Errors assigned* were in dismissing exceptions to the findings and conclusions of the court.

*John D. Farnham* and *Alexander Farnham*, for appellants.— The plaintiffs' claim is based on the proposition that, under the covenants of the lease, the "lessees"·are bound to pay for both minimum and excess quarterly, and that if payments for either are deferred, interest upon the amounts unpaid should be added, and all·payments made should be applied according to the method of partial payments, first, to interest, and then, to principal: Pusey v. Wright, 31 Pa. 395; Eaton's App., 66 Pa. 483; Audenried's App., 89 Pa. 114; Harris v. Kemble, 2 Dow. & Cl. 463; Green Western R. R. Co. v. Bacon, 30 Ill. 347; People v. Sevineford, 77 Mich. 573; Keim v. Kuffman, 15 Pa. C. C. R. 539; Ryan v. Ward, 48 N. Y. 204; Lake v. Weber, 6 Pa. Superior Ct. 42; Rawlins v. Wickham, 3 De G. & J. 304; Reynall v. Sprye, 1 De G. M. & G. 660; Kerr on Fraud and Mistake, 79; People v. County of N. Y., 5 Cowen, 331; Mfg. Co. v. Machine Shops, 86 Ky. 668; Frazier v. Hyland, 1 Har. & J. (Md.) 98.

*A. L. Williams* and *H. W. Palmer*, for appellee.—We conceive the law to be that when a man in possession of all his ·faculties, with knowledge or the means of knowledge before him, settles an account and receipts in full of all demands, such a settlement is not to be overturned long years after his death on a surmise that he did not know some detail of the business : Shillingford v. Good, 95 Pa. 25; Hamsher v. Kline, 57 Pa. 397 ; Chapman v. R. R. Co., 7 Phila. 204.

No interest can be collected on a debt accruing on an instrument not reserving interest after payment of the principal : American Bible Society v. Wells, 68 Me. 572; Southern Cent. R. R. Co. v. Town of Moravia, 61 Barb. 180; Tenth Nat. Bank v. Mayor, 4 Hun (N. Y. ), 429.

PER CURIAM, April 24, 1899 :

This record discloses no substantial error in any of the learned court's rulings, findings of fact or conclusions of law drawn

therefrom.   There appears to be nothing in either of the speci-fications that requires discussion.

The decree is affirmed on the opinion of the learned president of the 31st judicial district, who specially presided at the trial, and the appeal is dismissed at appellant's costs.