# Kane *v.* Schuylkill Fire Insurance Company, Appellant (No. 1).

*Equity—Equity pleading—Responsive answer—Corporation.*

An answer in equity of a corporation, sworn to by an officer on his personal knowledge, is entitled to the benefit of the equity rule that a responsive answer is evidence, only to be overcome by the testimony of two witnesses, or of one witness with corroborating circumstances, and is not to be regarded as mere pleading.

*Equity—Equity practice—Want of equity—Corporation.*

Although a bill in equity against a corporation by its general manager for discovery and an account might be dismissed because of want of equity due to the fact that the plaintiff had all the facts within his own knowledge, yet if the case has been referred and the question of jurisdiction has not been raised until a large amount of testimony has been taken, the court will not dismiss the bill, but will endeavor to reach an end of the controversy.

*Equity—Accounting—Corporation.*

On a bill in equity by the general manager of an insurance company against the company for an account, where it appears that the plaintiff under his agreement with the company was entitled to a percentage of gross premiums less expenses, and certain disputed items are entered in his books as expenses, such items should be charged against the plaintiff in the accounting.

*Corporations—Insurance companies—General manager—Contract.*

Where the general manager of an insurance company was entitled under his contract with the company to " twenty per cent of all gross premiums received by the company " less expenses, etc., and it appears that the course of business was for the agents to deduct their commissions first, and the company only to receive in cash the premiums after such deduction, and it also appears, that the defendant had agreed that " the gross premiums " should be considered for the purpose of determining plaintiff's commissions, the total amount of premiums, without any deduction of agents' commissions ; the defendant cannot set up a usage of the business that " gross premiums " meant the total premiums less agents' commissions.

Where a general manager of an insurance company was compensated by a percentage of the premiums less expenses, an allowance made to an agent in the settlement of a dispute about premiums collected, is an expense chargeable to the manager.

Where a general manager of an insurance company who is also a director has the management of the business of the company " subject to the control and direction of the president and board of directors," and receives

as his compensation a percentage on the gross premiums, he commits a gross violation of his duty to his employer, in keeping the board of direction dead locked, thus making his own powers as manager absolute and irresponsible.

Argued Jan. 8, 1901. Appeal, No. 133, Jan. T., 1900, oy defendant, from decree of C. P. No. 1, Phila. Co., June T., 1897, No. 1326, on bill in equity in case of William Kane v. The Schuylkill Fire Insurance Company. Before McCollum, C. J., Mitchell, Fell, Brown, Mestrezat and Potter, JJ. Reversed.

Bill in equity for discovery and an account.

From the record it appeared that the plaintiff, William Kane, was general manager of the defendant company under an agreement which contained, inter alia, the following clauses:

"1st. The party of the first part hereby employs the party of the second part to act as the General Manager of its business for the period of five (5) years from the date hereof, and the party of the second part agrees to accept such employment on the terms following: twenty per cent (20%) of all gross premiums received by the company shall be credited to expense account, and thereout shall be first paid all expenses of the company, including salaries of employees, but excluding salaries of officers, commissions to brokers and losses by fire or otherwise, and the balance remaining to the credit of said account, if any, at the end of each fiscal year shall be paid to the said William Kane for his services as general manager, and he shall not receive any salary other than as herein provided for.

"2nd. The said William Kane shall, subject to the control and direction of the President and Board of Directors of said Company take entire charge of the management of its business, to which he shall devote his best talents and energy, but nothing herein contained shall prevent the said William Kane from acting as officer, agent, or manager of any other insurance company, or from engaging in any other business whatsoever."

Plaintiff assumed management of the business, and the evidence tended to show that he did not conduct it in the usual and prudent manner.

The by-laws of the company required that there should be five directors; and there were, in the board, Alexander Balfour,

James G. Balfour, his son, William Kane, the plaintiff, and P. W. Clark, who was the secretary and paid by Kane. The fifth member was William Johnson, who resigned some time after the organization.

Kane and Clark, a paid employee, refused to fill the vacancy in the board.

During the period for which the accounting was demanded, it appeared that the gross premiums were $307,760.14. The premiums actually received in cash amounted to $281,946.30, the difference being agents' commissions. The various matters in dispute between the parties are stated in the opinion of the Supreme Court.

*Errors assigned* were in dismissing exceptions to the referee's report.

*Edward H. Weil*, with him *Arthur E. Weil*, for appellant.— The answer of the corporation defendant, supported by the oath of its president, is evidence which requires to be overcome by the testimony of two witnesses, or one witness with corroborating circumstances: Riegel v. American Life Ins. Co. 153 Pa. 134; Bussier v. Weekly, 11 Pa. Superior Ct. 463; Carpenter v. Providence Washington Ins. Co., 4 Howard, 185; Hayward v. Eliot Nat. Bank, 4 Clifford, 294.

*John G. Johnson*, with him *H. Gordon McCouch*, for appellee.

OPINION BY MR. JUSTICE MITCHELL, April 29, 1901:

The important question in this case, by which all the others are more or less affected, is whether an answer in equity of a corporation, sworn to by an officer on his personal knowledge, is entitled to the benefit of the equity rule that a responsive answer is evidence, only to be overcome by the testimony of two witnesses, or of one witness with corroborating circumstances, or whether it is to be regarded as mere pleading.

The precise origin of the rule has been the subject of difference of opinion among text writers, as is shown by the learned referee in this case. But the reason for it is fairly apparent. Cases in equity are those in which the law affords no adequate remedy. They are therefore exceptional, and before a party

should be granted exceptional and extra-legal relief his case should be established clearly. In issues at law all cases are clear in theory. If there is witness against witness and oath against oath, the jury decides which to believe and finds a verdict for one party or the other. There is no room for doubt. But in equity if there is oath against oath, ordinarily on paper, by depositions or testimony before an examiner, the matter, as the early expression was, is in equi-librio, and there is no clear case for the chancellor to act upon. The complainant having the burden of proof must fail.

But whatever its origin the rule is settled, and is a part of universal equity practice. The respondent is brought into court without his consent, and put to compulsory answer and disclosure of his knowledge on the subject of the suit for the benefit of his adversary. By the action of the plaintiff the testimony of defendant is thus made evidence, and it is only proper and just that if the plaintiff does not find it all in his favor, he should be required to overcome it by a preponderance of evidence to the contrary. No sufficient reason has been presented why a corporation should not be entitled to the protection of the rule. It is said that a corporation cannot answer under oath, but only under seal. This is conceded, but it is purely technical. A corporation can only act through the persons of its officers or other agents. Its corporate seal is not action, but only evidence of action by the proper officers. When therefore to the answer under seal there is added the oath of an officer on his own knowledge the whole becomes a corporate act, with all the advantages to the plaintiff of compulsory disclosure of the truth which he would have had in a suit against an individual, and he should take such advantages in the same manner cum onere.

The point has not been much discussed in Pennsylvania, but the opinion of this court was indicated by the late Chief Justice STERRETT in Riegel v. American Life Ins. Co., 153 Pa. 134, 143; and in Waller v. Kingston Coal Co., 191 Pa. 193, 202–203, an express ruling in accordance with our present views was made by the court below, and necessarily by this court in affirming the decree on his opinion.

The learned referee was of opinion that " the very great weight of American authority is contrary to the view " of appellant, but the authorities do not sustain him. If we take

out of the list of citations those which deal with answers under corporate seal only, there is no uniformity shown and in the weightiest authority, the Supreme Court of the United States, the practice is settled in accordance with our views: Carpenter v. Providence Washington Ins. Co., 4 How. 219. We are, therefore, of opinion that the ruling of the referee was erroneous, and the tenth assignment must be sustained.

This error as already said affects, to some extent, nearly all the other assignments, but we proceed to consider such of them as our present light enables us to dispose of.

There was no basis in equity for this bill, and it should have been dismissed on the filing of the answer. It prays for discovery and account from the defendant. But the duty of discovery and account was on the plaintiff himself. He was an employee as manager, in charge of the entire business; the books were kept by him, or under his direction by persons paid by and responsible to him; he was entitled to a fixed percentage of gross premiums received, the amount of which was easily ascertainable from books which he as manager was bound to keep less certain expenses he as manager was bound to pay and to show. There was no discovery called for by the bill of anything which he could not at any time ascertain from the evidence under his own control, and no account which it was not his duty to render to the defendant, with the burden of proof upon him all the way through. If he had presented an account showing a balance in his favor which defendant had refused to pay, he would have had a cause of action pursuable at law. But the case was put at issue on bill and answer, taken by agreement from the trial list and referred, and the referee has reported that the question of jurisdiction was not raised until several hundred pages of testimony had been taken. We will not, therefore, dismiss the bill now, but endeavor to reach an end of the controversy.

The first three assignments of error relate to the expenses charged by the referee to the plaintiff. A summary of such expenses was presented by plaintiff's bookkeeper as the referee reports " in a gross sum which cannot be examined or verified in detail," while on the other hand defendant's expert accountant made up a summary from the books. The referee not being satisfied with either made up and reported a schedule of his

own. But the testimony of the expert was that the items in his schedule (exhibit Y) were entered in the books as expenses. Prima facie therefore they should have been so charged to plaintiff, and they are similar to other items included in the referee's schedule. The referee has given no satisfactory explanation of this discrimination and in its absence the exclusion of the items in exhibit Y was apparently an error.

The fourth assignment raises a question which would be of some difficulty if squarely presented. Plaintiff was entitled by his contract to " twenty per cent of all gross premiums re ceived by the company," less expenses, etc. In the business done at the home office, the full premiums written in policies were received by the company in cash, but on business done outside, the agents deducted their commissions first and the company only received in cash the premiums after such deduction. The result was that (after allowing for cancelations and returns) the total gross premiums written were \$307,760.14, while the total gross premiums received by the company were only \$281,946.30. On which amount should the twenty per cent be calculated ? The referee discussing the question under the heading " the meaning of the words in the contract twenty per cent of the gross premiums," found that gross premiums meant premiums written. But it is to be noted that this wholly ignores the word " received," which was the word used by the parties and which presumably refers to the amount actually paid in to the company. We are, however, saved the necessity of deciding this question. Strickland, the defendant's expert being on the stand, testified that " we have agreed " upon the gross premiums as \$307,760.14. The distinction now made between premiums written and premiums received was not apparently then made. There was some testimony that the president of the defendant company had submitted the question to a friend in the business and had been advised by him that the understanding of the trade would construe the contract to include gross premiums written. We cannot say that had it not been for the agreement as above set forth, the plaintiff might not have followed up the line of evidence as to a usage of the trade that would have influenced the construction of the contract. This assignment must therefore be overruled.

The fifth and sixth assignments relate to the amount paid to

Forsythe. This was at first charged against plaintiff as a current expense of the business, on the presumption from the entry in the books that it was extra commissions. But the case being reopened for testimony on this point, it appeared that Forsythe's contract as agent was not profitable to the company and the latter terminated it. But on Forsythe's complaint of loss and refusal to make settlement of premiums collected, the plaintiff, as manager, made him an allowance of the amount in question upon procuring a settlement. The referee then reversed his former finding and charged the amount against the defendant. This was error. The termination of Forsythe's contract was an act in the course of the current business, and whether suit should be brought against Forsythe for not paying over premiums, subject to a defense of damages for breach of contract to employ him, or an allowance should be made him on an amicable settlement, was a question of business which plaintiff, as manager, took charge of and settled. The money expended in the settlement was clearly an outlay incident to a change in the method of carrying on the business and therefore an expense within the contract of the parties.

The seventh, eighth and ninth assignments relate to the conduct of the plaintiff. While the testimony is overwhelming that it was not in accordance with the usual and prudent management of such business, yet we see no sufficient reason to dissent from the referee's finding that it was not reckless or fraudulent. But after April, 1897, his conduct in general was insubordinate, and his action in keeping the board of direction dead locked, thus making his own power as manager absolute and irresponsible was totally without even color of excuse, and would have justified his immediate dismissal. He was an employee in a quasi-fiduciary capacity, having the sole and entire management of the business. His first duty was of fidelity to his employers. He had a profitable contract with them, and when differences of opinion arose between him and the president of the company, the accident of a vacancy in the board of direction enabled him and his employee to hold the board at a standstill, and have his own way. The referee finds that in so doing he was but taking care of his own interest and was "justified in his conduct." No authority nor any principle of law is cited to sustain this extraordinary doctrine, nor have appel-

lee's counsel ventured to make any argument in its favor. The appellee had a profitable contract with the company, and he had the management of the business "subject to the control and direction of the president and board of directors." Although he held some stock (less than half of one per cent) he was nevertheless an employee, and his duty as such was to protect the interests of his employer. If they conflicted with his own his duty was to prefer the former or terminate his employment and look to his contract for redress. The employer commits his interests to the charge of the employee, and the fundamental principle of the relation is the fidelity of the latter to the interests in his charge. The conduct of the plaintiff was a gross violation of this fundamental duty.

Decree reversed with directions to restate the account in accordance with this opinion. Costs to be paid by appellee.