# Wytheville.

## CARLE ET AL V. CORHAN ET AL.

### June 10, 1920.

1. ANSWER—*Answer of Corporation as Evidence Against Complainant.*—There was a general waiver of an answer under oath in an amended bill against a corporation and other defendants, but there was also a subsequent special prayer therein for a discovery under oath from the corporation as to a certain fact. The disclosure in the corporation's answer was made in strict response to the prayer, and the answer was sworn to by the corporation's president, in effect stating as facts such matters therein as came within his own knowledge. It appeared from the record that the president necessarily had personal knowledge of the facts as to which the discovery was demanded.

   *Held:* That the answer of the corporation upon that point was evidence against the complainant, only to be overcome by the evidence of two witnesses, or of one witness and corroborating circumstances.

2. ANSWER—*Answer of One Defendant as Evidence for Another.*—The general rule is that the separate answer of one defendant cannot be used as evidence for a codefendant, but there are exceptions to this rule.

3. ANSWER—*Answer of One Defendant as Evidence for Another—Answer of Corporation as Evidence of Codefendants—Promoters of Corporation—Case at Bar.*—The answer of the corporation in the instant case falls within one of the exceptions to the rule that an answer of one defendant is not evidence for a codefendant. The respondent corporation, as to this particular matter, stood in a relationship of privity with its codefendants; and, moreover, the very form of the bill and its special prayer for discovery called for an answer, which, if adverse to complainant, necessarily established as a fact the very defense upon which the corporation's codefendants relied.

4. CORPORATIONS—*Misnomer in Contracts and Deeds.*—If it can be determined by evidence *aliunde* what corporation is intended, the court will give effect to the instrument (grant, contract,

will, etc.), regardless of the error in the name. For example, a bequest to "the secretary of the Board of Foreign Missions of the Presbyterian Church in the United States," was held sufficient to carry a legacy to a corporation whose legal title was "Trustees of the General Assembly of the Presbyterian Church in the United States, for the Benefit of the Executive Committee on Foreign Missions."

5. CORPORATIONS—*Promoters—Liability of Promoters—Misnomer of Corporation.*—The promoters of a corporation entered into negotiations for the purchase of a theatre from complainants. All of the parties understood that the promoters contemplated the formation of a corporation for the benefit of which they were making this purchase.

*Held:* That the promoters could not be held personally liable as partners, although they executed a deed of trust and notes in the name of the corporation a few days before the actual formation of the corporation, and the deed of trust and notes were signed "American Theatre Co., Inc.," instead of "American Theatre, Inc."

6. APPEAL AND ERROR—*Objection for the First Time on Appeal— Exception to Commissioner's Finding.*—The failure to except to the finding of a commissioner because the counsel for the parties had become involved in difficulties and left the city, and the decree was entered confirming the report before the parties knew anything about it, if properly presented in the court below and made a part of the record, might be availed of upon appeal; but if not so presented it could not be considered on appeal.

7. REFERENCE—*Questions of Law.*—Questions of law are for the determination of the court upon the evidence adduced, and it is not proper to refer them to a commissioner.

8. REFERENCE—*Questions of Law—Exceptions to Report.*—The reference in the instant case did not involve the taking of an account, and merely amounted to a direction to a commissioner to take evidence upon the liability of the defendants and give an opinion thereon. In such a case the court cannot delegate to a commissioner the duty and obligation of weighing the evidence and deciding the case independent of any opinion expressed in the report. Exceptions to the report, or want of them, are wholly immaterial. The reference in itself is harmless error, but the court, and not the commissioner, must decide the case upon the evidence returned.

9. REPORT OF COMMISSIONER—*Fundamental Error of Law—Exceptions.*—Where it is apparent from the face of the report of a commissioner and from the pleadings and exhibits, indenendent

of other evidence, that the commissioner's report was based upon a fundamental error of law, no exception to the report is necessary.

10. PROMOTERS—*Liability—General Rule—Case at Bar.*—There is a general rule that persons dealing with promoters of corporations to be thereafter formed are allowed the double security of the promoters and the corporation when it comes into being; but where it appears, as it does in the instant case from the face of the commissioner's report and the pleadings and exhibits, that the contract was made solely on behalf of, and that the credit was extended solely to, a corporation which was then in process of formation, and which shortly thereafter procured its charter, the rule does not apply.

11. APPEAL AND ERROR—*Judgment of Appellate Court—Remand with Leave to Transfer to Law Side.*—In a suit in equity where it appears that complainant's remedy is at law, the Supreme Court of Appeals will remand the cause to the court below, with leave to complainants, if so advised, to have the same, in accordance with section 6084 of the Code of 1919, transferred to the law side of the court, and to amend their pleadings so as to be entitled to ask for a judgment at law against the defendant.

Appeal from a decree of the Corporation Court of city of Hopewell. Decree for complainants. Defendants appeal.

*Reversed.*

The opinion states the case.

*W. L. Devaney, Jr., J. K. McCotter* and *Willis C. Pulliam*, for the appellants.

*Wm. McK. Woodhouse*, for the appellees.

KELLY, P., delivered the opinion of the court.

The pertinent facts in this case may be stated as follows: K. C. Corhan and M. Numair were the owners of a building, a lease of two lots in the city of Hopewell upon which

the building was situated, a theatre license and certain contracts and personal property, all of which together constituted or pertained to what was locally known as the American Theatre.

Shortly prior to November 29, 1916, F. Carle, acting for himself and Will Monjot, entered into negotiations with Corhan, acting for himself and Numair, looking to the purchase of this property. Corhan testified that he then thought the purchase was to be made by Carle and Monjot as individuals, but the clear preponderance of the evidence is to the effect, and the subsequent written contracts conclusively show that all of the parties understood that Carle and Monjot contemplated the formation of a corporation for the benefit of which they were making this purchase.

On November 29, 1916, Corhan and Numair entered into a written contract whereby as "partners trading under the firm name of The American Theatre," parties of the first part, they agreed to sell the above mentioned property to "The American Theatre, Inc., a corporation in process of formation," party of the second part. The consideration was $3,897.58, of which $800 was paid in cash, and the residue was to be paid in monthly installments. The contract referred to both the partnership and the proposed corporation as being "of the city of Hopewell," but this reference was merely descriptive and evidently not intended as a part of either name. To this contract were affixed the individual signatures of Corhan and Numair, and the name of "American Theatre Co., Inc., by F. Carle."

On December 6, 1916, a paper was executed purporting to be a deed of trust "between The American Theatre of Hopewell, Inc., of the city of Hopewell, Va., party of the first part, and K. C. Sidbury, trustee for K. C. Corhan, agent, of the city of Hopewell, Va., party of the second part," conveying to the trustee the aforesaid property to secure the unpaid purchase money thereon, represented

by sundry notes set out in the deed of trust and described therein as being "signed by the American Theatre, Inc., of the city of Hopewell." This deed concluded in this form:
"Witness the following signatures and seals:

"AMERICAN THEATRE CO., INC. (Seal),
"F. CARLE, Pres. (Seal),
"WILL MONJOT, Sec. (Seal)."

There was no corporate seal attached to the deed, but the certificate of acknowledgment described the grantor as "The American Theatre, Inc.," was in due form for an acknowledgment by a corporation, and was dated December 6, 1916.

The notes mentioned in the deed of trust are not in the record, but are shown by the evidence to have been signed "American Theatre Co., Inc., F. Carle, president; Will Monjot, secretary."

On the 6th of December, the day on which the deed of trust and the notes were executed and delivered, F. Carle, Bell Carle and Will Monjot signed and acknowledged a certificate in due form for the incorporation of "The American Theatre, Incorporated," designating Hopewell as the place for the principal office, and this certificate was duly perfected as a charter of incorporation and lodged with the Secretary of the Commonwealth on December 15, 1916.

The theatre company thus incorporated took over the property, and the evidence leaves no room for doubt that Corhan and Numair knew of this fact.

Default was made in the payment of the notes above recited, and thereupon Corhan and Numair brought a suit in equity seeking to hold Carle and Monjot personally and individually liable on the notes, and the sole ground upon which they rely for jurisdiction in equity and for the relief prayed for is that Corhan and Monjot falsely and

fraudulently pretended to be acting for a corporation which did not then exist, and never thereafter came into existence.

In the original bill only Carle, Monjot and Sidbury, trustee, were made parties defendant, but subsequently by a petition in the nature of an amendment the complainant alleged "that since said bill has been filed * * it has developed that the said property, building, leases and license have been under the control of the American Theatre, Incorporated, a corporation under the laws of the State of Virginia, who have been using the same and running therein a moving picture theatre, etc." The prayer of the petition, or amended bill, was "that the said American Theatre, Incorporated, a corporation under the laws of the State of Virginia, be made a party defendant to said bill and required to answer the allegations and prayers of said bill, as though the same were herein specifically set out, but an answer under oath is expressly waived, that the said American Theatre, Incorporated, be required to disclose under oath what interest they have in said property and it be ascertained whether they are in any way liable for the payment of the indebtedness set out in said bill." There was also added to the foregoing a prayer for general relief. The corporation thus named in the amendment filed its answer, in which, among other things, it stated that "the buying of the said lease was duly authorized by the board of directors of the said corporation, and that the said directors have duly confirmed and accepted the premises according to the agreement made with the plaintiffs on the 29th day of November, 1916, and that it is ready and willing to live up to the terms of said agreement, etc." This answer was accompanied by the affidavit of F. Carle, stating "that he is the president of the American Theatre, Incorporated, and that as such he has read the foregoing answer to the bill herein filed, and that the foregoing facts stated are true except those matters therein stated on in-

formation and belief and as to those matters he believes them to be true."

Carle and Monjot also filed an answer to the bill in which they denied ever having had any individual interest in the matter in controversy, or having assumed any personal liability whatever in regard thereto.

When the case first came on to be heard, a commissioner was appointed and directed among other things to report:

"2. An account showing who are the makers of the notes set out in the bill and proceedings in this cause, and who is liable therefor and who is entitled to the proceeds thereof."

"4. An account showing to whom under the agreement of K. C. Corhan and M. Numair, dated November 29, 1916, the property set out therein was sold and who executed the deed of trust dated December 6, 1916, to K. C. Sidbury, trustee, and who is bound by the terms thereof."

"6. An account showing how much is due upon the notes secured under said deed of trust and who is liable thereunder and who is entitled thereto."

Under this decree the commissioner reported "that the said F. Carle and Will Monjot, as individuals, are the true makers of said notes and are liable for the payment of same." As a reason for this conclusion, the commissioner emphasizes the various names by which the proposed corporation is designated in the several contracts, notes and other writings executed by the parties, and the fact that the charter of the American Theatre, Inc., was not perfected until the 15th day of December, 1916.

The commissioner further reported "that under said agreement (of November 29, 1916) the said property was to be sold to the American Theatre, Inc., a corporation in process of formation, but that this corporation had not been chartered when the property was delivered, and that it appeared from the evidence to have been delivered to Carle and Monjot, and that Carle and Monjot as individuals executed the deed of trust and were bound by its terms."

There were no exceptions to this report, and it was subsequently confirmed in all respects and a personal decree was rendered against Carle and Monjot jointly in their individual capacity. Thereupon they obtained this appeal. Reduced to its essence, the right of the complainants to a personal decree against Carle and Monjot depends upon the fact that the notes and the deed of trust were signed "American Theatre Co., Inc.," instead of "American Theatre, Inc."

It is perfectly clear that Corhan and Numair undertook to contract with a corporation which was to take its name from the property they were selling. This name was used loosely by all of the parties, including Corhan himself (the only witness for defendant), who was unable on his cross-examination to say whether, when the notes and deed of trust were signed, the corporation was called "American Theatre Co., Inc.," or "American Theatre, Incorporated."

[1-3] The identical corporation which all parties contemplated under the precise name mentioned in the body of the contract of November 29, 1916, as being then "in process of formation," was in a few days thereafter duly incorporated and was put in possession of the property from which it took its name. The complainants themselves wrote out a transfer of the lease and license to the corporation as the "American Theatre, Incorporated." They accepted the deed of trust and notes with the slight variations in name without complaint or objection. They accepted $100 on one of the notes after the charter had been duly granted, and took a new note signed exactly like the original. The American Theatre, Inc., by its proper technical name, is made a party to this suit by the complainants, and has answered, stating that it took possession of the property under the agreement with the complainants, and has assumed full responsibility thereunder. This answer establishes the fact that the contract was made for and as-

sumed by the American Theatre, Incorporated. There was a general waiver of an answer under oath in the amended bill, but there was also a subsequent special prayer therein for a discovery under oath from the corporation as to this particular fact. The disclosure was made in strict response to the prayer, and the answer was sworn to by F. Carle, as president, in effect stating as facts such matters therein as came within his own knowledge. The record shows that he necessarily had personal knowledge of the facts as to which the discovery was demanded. This makes the answer of the corporation upon that point evidence against the complainant, under the rule which we approve and which was declared to be a sound one in the somewhat elaborate note in 7 Va. Law Reg., p. 145 *et seq.* As shown in that note the rule is supported by *Carpenter* v. *Insurance Co.* (U. S.), 4 How. 219, 11 L. Ed. 931; *Waller* v. *Coal Co.*, 191 Pa. 193, 43 Atl. 235, and *Kane* v. *Schuylkill Fire Ins. Co.*, 199 Pa. 198, 48 Atl. 989. The effect of this answer is not overcome in the record by the requisite counter vailing evidence of two witnesses, or of one witness and corroborating circumstances. Indeed, there is no evidence at all against the particular statement of the answer here under discussion, and that statement, on the other hand, finds strong support and corroboration from other evidence, both direct and circumstantial. Furthermore, this disclosure in the answer of the corporation enures to the benefit of its codefendants, Carle and Monjot. The general rule, certainly in Virginia, is that the separate answer of one defendant cannot be used as evidence for a codefendant. *Frank & Adler* v. *Lilienfield et al*, 33 Gratt. (74 Va.) 377, 380; Lile's Eq. Pl. & Pr., sec. 192; 1 Hogg's Eq. Proc., sec. 447. (The rule is otherwise stated in 16 Cyc. 398.) But, as said by Judge Burks in the case of *Frank & Adler* v. *Lilienfield et al, supra,* there are exceptions to the rule, and this case falls within one of the exceptions. The respondent

corporation, as to this particular matter, stood in a relationship of privity with Carle and Monjot; and moreover, the very form of the bill and its special prayer for discovery called for an answer, which if adverse to complainant, necessarily established as a fact the very defense upon which Carle and Monjot rely.

[4, 5]    Under the foregoing circumstances, Carle and Monjot cannot be held personally liable as partners upon the theory that they assumed to act for a corporate principal which had no existence.  We have here none other than the case of a mistake, and a slight one at that, in the name of the corporation whose identity has never at any time been the least doubtful.  The principle governing such a situation is perfectly familiar.  At page 32, of his notes on' Private Corporations (1900), Mr. Minor Lile, discussing the effect of the misnomer of corporations in contracts and deeds, says: "If it can be determined by evidence *aliunde* what corporation is intended the court will give effect to the instrument' (grant, contract, will, etc.) regardless of the error in the name.  For example, a bequest to "the secretary of the Board of Foreign Missions. of the Presbyterian Church in the United States," was held sufficient to carry a legacy to a corporation whose legal title was "Trustees of the General Assembly of the Presbyterian Church in the United States, for the Benefit of the Executive Committee on Foreign Missions," citing *Trustees* v. *Guthrie*, 86 Va. 125, 10 S. E. 318, 6 L. R. A. 321; *Culpeper Soc.* v. *Digges*, 6 Rand. (27 Va.) 165, 18 Am. Dec. 708; 1 Morawetz on Corp. (2d ed.), sec. 351, and cases cited.

It is true that the corporation had not been actually perfected when the notes were signed, and that Corhan testified that he was assured by Sidbury that the charter had already been granted.  But Carle and Monjot were understood to be acting only for a corporation, as is con-

clusively evidenced by the written contract, deed of trust and notes; this corporation was in process of formation, and was in a few days thereafter actually perfected; and after it had been so perfected Corhan and Numair took from it a renewal note which slightly misstated the corporate name, but which Corhan and Numair knew was intended to represent the obligation of the corporation with which they were dealing.

[6-9] No point is made in the brief of the appellee, and none that we recall was made in the oral argument, upon the effect of the failure of counsel for Carle and Monjot to except to the finding of the commissioner. It may, however, be well to advert to this feature of the case. It is explained in the brief for Carle and Monjot, and was stated during the argument that the failure to file exceptions was due to the fact that the counsel formerly representing Carle and Monjot had become involved in difficulties, had left Hopewell, and that the decree was entered confirming the report before they knew anything about it. This fact, if it had been properly presented in the court below and made a part of the record, might be availed of now, but it is obvious that we cannot consider it because it was not so presented. We are of opinion, however, that the error in the finding of the commission is of a character which can be relied upon for the first time in this court. This is true for two reasons. In the first place it was not proper to refer the cause to a commissioner upon the question of the liability of the defendants. That was a question of law for determination by the court upon the evidence adduced. The reference in this respect did not involve the taking of an account, and merely amounted to a direction to the commissioner to take evidence and give an opinion thereon. In such a case the court cannot delegate to a commissioner the duty and obligation of weighing the evidence and deciding the case independent of any opinion expressed in the re-

30

port; and exceptions to the report, or want of them, are wholly immaterial. The reference in itself is harmless error, but the court and not the commissioner must decide the case upon the evidence returned. *Bresee .v. Bradfield,* 99 Va. 331, 337-8, 38 S. E. 196. In the second place, even if the question could have been properly referred, it is apparent from the face of the report and from the pleadings and exhibits, independent of other evidence that the commissioner's report was based upon a fundamental error of law whereby he attached to the mere discrepancy in the corporate name and to the mere fact that the corporation had not been perfected on December 6, 1916, the legal effect of rendering Carle and Monjot then and there unalterably liable as individuals, whereas the facts stated in the report, in the light of the pleadings and exhibits, lead as a matter of law to the contrary conclusion. Under such circumstances, no exceptions are necessary. See 5 Va. Law Reg. (N. S.) 665-666.

[10] There is a general rule that persons dealing with promoters of corporations to be thereafter formed are allowed the double security of the promoters and the corporation when it comes into being; but where it appears, as it does in this case from the face of the commissioner's report and the pleadings and exhibits, that the contract was made solely on behalf of, and that the credit was extended solely to, a corporation which was then in process of formation, and which shortly thereafter procured its charter, the rule does not apply. *Strause* v. *Richmond, etc., Co.,* 109 Va. 724, 729, 65 S. E. 659, 132 Am. St. Rep. 937.

[11] For the reasons stated, we are of opinion that the decree appealed from is erroneous, and should be reversed; and this court proceeding to enter the decree which the lower court should have entered will dismiss the bill as to Carle and Monjot and award them their costs incurred in the court below and on this appeal. But as to the American

Theatre, Incorporated, we shall remand the cause to the corporation court, with leave to complainants, if so advised, to have the same, in accordance with section 6084 of the Code, transferred to the law side of the court, and to amend their pleadings so as to be entitled to ask for a judgment at law against the corporation for the balance due on its notes. See *Pence* v. *Tidewater Townsite Corp., post, p.* 235, 103 S. E. 694, decided at this term.

*Reversed.*