## In re ZIMMERMAN.

### Claim of JAMES R. KENDRICK CO., Inc.
### No. 20882.

District Court, E. D. Pennsylvania.
July 31, 1940.

Samuel P. Lavine, of Philadelphia, Pa., for petitioner-claimant.

Bertram Bennett and Jenkins, Bennett & Libby, all of Philadelphia, Pa., for Trustee.

BARD, District Judge.

This is a petition for review of an order of the Referee disallowing petitioner's claim for interest on a debt due it by the bankrupt.

Petitioner, James R. Kendrick Co., Inc., filed a proof of claim alleging a debt owing by the bankrupt in the amount of $8,771.05, in principal, and $5,606.73, in interest thereon, totalling $14,377.78. As collateral for his indebtedness, the bankrupt had assigned to the petitioner-claimant two life insurance policies upon which $7,588.79 has been realized as a result of the debtor's death shortly after the filing of the involuntary petition in bankruptcy. Thereafter, petitioner sought allowance of its claim in the amount of $6,788.99. To this, the Trustee filed an objection contending that $5,606.73 thereof represented interest charges which were not recoverable. As previously noted, this objection was upheld and the claim for interest was disallowed.

From the testimony adduced before the Referee, it appears that the bankrupt and the claimant had maintained business relations for more than eighteen years prior to bankruptcy, during which period the bankrupt had purchased large quantities of merchandise from the claimant. Beginning with January, 1926, and perhaps earlier, continuing for a period of over thirteen years, the claimant rendered monthly and

annual statements to the bankrupt in which interest never was charged on balances due. Moreover, interest never was added to the balances due appearing in the claimant's own book.

T. Frank Kendrick, secretary and general manager of the claimant, testified that the bankrupt never paid interest on sums due and, further, none was ever demanded of him. The only suggestion of the entry of interest in the relations between the parties arises from Kendrick's testimony that, on one or two occasions, the bankrupt orally promised to pay interest, although Kendrick admitted the claimant never demanded it. The Referee, however, expressed grave doubts as to the credibility of the latter portion of this testimony.

There is no dispute as to claimant's right to charge interest on balances due, nor as to the accuracy of the calculation in the proof of claim. However, the Referee was of the opinion that, from its long course of conduct, the claimant had waived any rights to such interest.

After discussing the applicable decisions,[1] the Referee stated in support of his order:

"As the Referee reads the above cases, it appears to him that it is the law that there may be a waiver, express or implied, of a contractual right, but there is no absolute presumption of such waiver. Such waiver will not be presumed or implied contrary to the intention of the party whose rights would be injuriously affected thereby, unless by his conduct the opposite party has been misled, to his prejudice, into the honest belief that such waiver was intended or consented to. Furthermore the waiver must be a clear, unequivocal and decisive act of the party, showing such a purpose or act amounting to an estoppel on his part.

"The question before the Referee is, therefore, whether or not the acts of the claimant, alleged to constitute a waiver, are such as to bring them within the requirements that, first, they be 'clear, unequivocal and decisive' and that, second, the bankrupt was misled by such conduct 'to his prejudice into the honest belief that such waiver was intended or consented to'.

"It seems to the Referee that no act on the part of the claimant, apart from a formal waiver in writing, signed, sealed and delivered, could be more unequivocal than the course of conduct pursued by the claimant during the 18 years, wherein never at any time did it cause interest on unpaid balances to be entered upon its books of account, nor present in its periodical statements to the bankrupt a demand for interest on such balances.

"On the subject of prejudice, to which the bankrupt may have been subjected, by reason of the failure on the part of the claimant ever to suggest that the payment of interest was contemplated, the Referee would urge that to say that to permit a customer to incur an obligation of $5,600.00, which is never mentioned to him, is not misleading him, to his detriment, does not make sense in the usual and ordinary course of business dealing. Suppose that a man, in a modest business, as was the instant situation, finds out one day that he owes $5,600.00 he never suspected, would one venture to say that the concealment of such a liability would not be to his detriment? Such an unsuspected burden might easily precipitate the failure of a small business, as most small businesses manage to get along on a lesser margin of financial responsibility.

"There too are other matters to which the Referee would point which likewise, as he believes, indicate an intention on the part of the claimant to waive this item of interest. The Referee has already spoken of the fact that, in 1927 and again in 1928, the bankrupt assigned to the claimant two policies of insurance having a total face value of $10,000., which insurance policies upon maturity were worth to the claimant the sum of $7,588.79; or, in effect, an absolute protection to the claimant for the principal sum of his claim, excepting a balance of about $1,000.00. It is a fact, of which the Referee has knowledge from the administration of this estate, that the bankrupt carried not only this insurance, but a very considerable amount of additional insurance, unpledged, which ultimately was paid over to the Trustee upon the death of the bankrupt. Whether or not the claimant knew of the existence of this additional

[1] In this regard, see Dougherty v. Thomas, 313 Pa. 287, 297, 169 A. 219; Waller v. Kingston Coal Co., 191 Pa. 193, 202, 43 A. 235; Wister's Appeal, 86 Pa. 160, 162; McDermott v. McDermott, 130 Pa. Super. 127, 130, 196 A. 889; Delaware & Hudson Co. v. Franklin Railway Oil Co., 16 Pa.Dist. & Co.Rep. 576; Fritz's Estate, 19 Phila. 95.

insurance, the Referee does not know; however, so close and intimate were the relations of these parties, over so long a period of time, that it does not seem improbable. If then the claimant had always contemplated the collection of interest on unpaid balances, the question naturally and emphatically poses itself, as to why there was no demand by the claimant on the bankrupt for the additional insurance, which was available, to insure itself of this very large item of alleged indebtedness for interest.

"A further episode which likewise, in the opinion of the Referee, points to the conclusion that it was never intended that interest should be collected is the course of conduct on the part of the claimant after, as he alleges, he was promised payment of interest. The Referee has called attention to this episode (p. 3), but again adverts to the fact that, despite the alleged promise, there was no responsive statement at the time that it is alleged to have been made, on the part of the claimant, that interest had always been intended by the claimant, nor did this alleged promise on the part of the bankrupt result in a course of conduct in sending out periodical statements, which would disclose such intention.

"The Referee is strongly impressed, in addition, by the following thought: Why did the claimant never demand interest? It seems logically reasonable to believe that to do so would have upset the friendly relations that had existed over a long period of time, and perhaps destroy the business connection. Here was a valued business connection, extending over a period of 18 years, with average annual purchases over a period of ten years of about $2,200.00. Suppose that at the end of 1930, the claimant had said to the bankrupt—'No, you don't owe me $6,829.13 according to the bills as rendered, but on the contrary you .owe me $8,207.46, which includes interest'; or suppose that four years later he had said —'No, you don't owe me $8,693.00, as per bills, but $12,087.02'; or in 1939 suppose he had said—'No, you don't owe me $8,771.-03, but on the contrary you owe me $14,-377.78', the difference being the item of interest which had never in the course of the 18 years, excepting only on the one occasion, been mentioned, would the bankrupt under these circumstances have been likely to continue as a customer, with a demand upon him of an unsuspected burden in the amount of $5,600.00? Would such conduct on the part of the claimant have convinced the bankrupt that further continuance of business relations was inadvisable? It is probable. Why then was the interest not mentioned? Obviously just to avoid such a situation. Now that the customer is a bankrupt, not only a bankrupt, indeed, but dead, and therefore not only lost as a customer, but with all possibility of horrid embarrassment avoided, it is safe, for the first time, to speak of interest. The claim for interest, in the sum of $5,606.73, is disallowed."

From the foregoing, I am of the opinion that the Referee not only has correctly stated the governing principles of law but also has applied them properly to the instant controversy.

Accordingly, the order of the Referee is confirmed.

### In re GRIM.