## GLOVER v. NATIONAL FIRE INS. CO. OF BALTIMORE.

(Circuit Court of Appeals, Fourth Circuit. February 1, 1898.)

### No. 238.

1. PAROL EVIDENCE—FIRE INSURANCE—ESTOPPEL.

The rule excluding parol evidence to vary, contradict, etc., a written contract, does not authorize the exclusion of evidence by an insured person that a misdescription in the policy, relied on as a defense, was made by the insurer's agent, who knew all the facts, when such evidence is offered to show an estoppel.

2. FIRE INSURANCE—MISDESCRIPTION—ESTOPPEL.

An insurance company is estopped to rely on a misdescription of the property, when the application was prepared by its agent, who had authority to issue the policy, and who knew the actual facts concerning the property.

In Error to the Circuit Court of the United States for the Eastern District of Virginia.

About May 10, 1893, Dr. S. G. Glover, the plaintiff in error, bought from G. H. Jackson & Co., of Cairo, Ill., a house and lot at Ashland, about 20 miles from Richmond, Va. The house was at that time occupied by Mrs. Baldwin, a sister of Jackson, who had "some boarders or roomers there," and was insured in the defendant company through the agency of S. H. Pulliam & Co., who were the general agents of the insurance company, having power to write or issue policies without submitting the risk to the home office, which was at Baltimore, Md. The Pulliams were relatives of the Jacksons, and to some extent looked after their interests: Hill Carter, Esq., a member of the bar of Richmond, being their attorney who prepared the deed of conveyance from Jackson to Glover and forwarded the same for execution to Cairo. Without waiting for the return of the deed of conveyance, and after the sale was agreed upon, Glover was let into possession of the property, and immediately established in it a Keeley institute. The terms of sale were a part cash and a part in notes secured by a deed of trust. The property had been insured in the name of Jackson in the defendant company, the policy bearing date May 6, 1893, and running for three years, and was described as "one frame dwelling at S. W. corner College Ave. and Taylor street, in Ashland. Va., L. C. A." It does not appear that the Jacksons had ever signed any application for insurance, or furnished any description of it. Carter, as attorney for the Jacksons, desiring security by way of insurance for the deferred payments, went with Glover, who was a citizen of the state of Nebraska, to Pulliam's office, and introduced him. He is uncertain whether the introduction was to Samuel H. or to Thompson Pulliam, both being members of the firm. The object of their visit being to secure the payment of the amount due on the deferred notes to the Jacksons, in the event of a loss by fire, it was considered better to issue a new policy instead of transferring the old one. The exact date of this visit is not disclosed by the testimony. It was probably some day between May 10th and May 19th, and on the 22d May this letter was written:

"Richmond, Va., May 22nd, 1893.

"Mr. Hill Carter, City—Dear Sir: We inclose herewith policy for Dr. S. G. Glover, the same having been properly indorsed, and you will please collect from him $52.50 for the same for account of Messrs. Jackson & Co., unless you have already done so.

"Yours truly,                                      Samuel H. Pulliam & Co."

The policy No. 50,766 is for $3,500, in the name of Dr. S. G. Glover, and the property is described as follows: "On the three-story frame, metal or slate roof building, occupied as a dwelling, situate at the southwest corner of College avenue and Taylor street, in Ashland, Va. Loss, if any, payable to Hill Carter, trustee, as his interest may appear." It is countersigned by Saml. H. Pulliam & Co., agents, May 23, 1893, and expires on May 6, 1896. The building was destroyed by fire on February 3, 1896, and this is an action in assumpsit on the policy, to which the defendant company pleaded the general issue, with an agreement of counsel that under this plea any defense might be set up which defendant might prove under a special plea.

The action was originally brought in the circuit court for the city of Richmond, and removed by the defendant company by petition to the United States circuit court for the Eastern district of Virginia, where it came on to be heard in due course, resulting in a verdict for the defendant, the jury stating that they found for the defendant "under the instructions of the court." The testimony clearly showed that the house was used for the reception, entertainment, and treatment of patients in a Keeley cure establishment, and the proof was that the rate of premium charged for dwelling houses was considerably less than that for such establishments which were rated as hospitals; the rate for dwellings being 60 cents per $100; for boarding houses, $1.50 per $100; for hospitals, $1.60 per $100; there being no special rate for Keeley cure establishments eo nomine. These were the rates fixed by the Southeastern Tariff Association. There was no proof that the difference of rates was brought to the attention of Glover prior to the writing of the policy, and his testimony was that he never knew that there was any difference in premium. In the course of the trial evidence was offered tending to show that at the time the insurance was effected the agents of the insurance company knew that the building insured was occupied as a Keeley institute. This testimony was taken subject to exception, but subsequently the defendant moved to strike out all the testimony on the part of the plaintiff's witnesses relative to conversations alleged to have been held with the agent of the defendant prior to the issue of the policy, "because all such conversations, if had, were merged into the written contract." This motion was granted, and the court charged the jury that the "uncontradicted testimony in the case is that the rates for insuring a dwelling house used as a dwelling are much lower than for a building used for the entertainment, reception, and treatment of patients in an establishment like this. The rate paid by the plaintiff, the consideration for his contract, was that of a dwelling house used as a dwelling, and not for an establishment for the Keeley cure. Here, then, he has alleged one kind of contract and proved another. If we were now to say that the insurance was not on a dwelling house to be used as a dwelling, we would be making for the parties a new contract; certainly not the contract upon which this suit was brought." The court thereupon instructed the jury to find for the defendant, and it so found.

Charles V. Meredith (Preston Cocke, on brief), for plaintiff in error.
William Pinkney Whyte, for defendant in error.

Before GOFF, Circuit Judge, and BRAWLEY and PURNELL, District Judges.

BRAWLEY, District Judge, after stating the case as above, delivered the opinion of the court.

The grounds upon which the court below was moved to reject the testimony was that all conversations between the parties were merged into the written contract, and that parol evidence was inad-

missible to show that the intent and meaning of the parties was different from what the words of the contract expressed; and authorities of commanding weight are cited to support the proposition that when a policy contains plain and unambiguous language, which has a settled legal construction, neither party can, by parol evidence, be permitted to prove that the instrument does not mean what it says. This motion proceeded upon a misconception of the object for which the testimony was offered. It was not for the purpose of changing the terms of the contract, but to show that the circumstances were such that, at the time that the contract was entered into, the insurer actually knew all the facts relating to the risk, and is estopped by such actual knowledge from setting up in avoidance of the policy either the mistake or omission to state those facts upon its face. The court below held that, as the policy was upon a house used as a "dwelling house," the plaintiff was not entitled to recover, because the proof showed that the house was used as a Keeley institute, and, as the rate of premium charged for a Keeley institute was much greater than that charged upon a dwelling house, he could not allege one kind of contract and recover upon proof of another, and the testimony was offered to show that the plaintiff was ignorant of the difference in the rates, that he did not furnish a description of the property insured, and that at the time when the policy was written the agent knew that the house was in actual use as a Keeley institute. This testimony was objected to, not because of its insufficiency, but for illegality, in that it tended to vary the terms of the written contract. The proof showed that at the time when the plaintiff purchased the property in question it was insured in the defendant company, and that it was then occupied as a boarding house by a relative of the agents of the company; that for the purpose of securing the deferred payments it was deemed advisable that a new policy be issued; that immediately after the purchase it was occupied by the plaintiff as a Keeley institute; and testimony was offered tending to show that the agents of the company knew that it was so occupied.

It is not claimed that the plaintiff was guilty of any fraud or concealment of the nature of the use for which the property was intended, or that he furnished the description which was written in the policy. Whatever may be the conclusion as to the lack of definiteness in the conversation with the agents at the time the insurance was effected, the admitted facts controvert any suspicion that the misdescription in the policy was due to any concealment or lack of openness on the part of the plaintiff, or that the building subsequent to the writing of the policy was converted to another and different use. The policy was written after the plaintiff had left Richmond, and was left with Hill Carter, Esq., who was the attorney for the vendors, and never seen by the plaintiff until after the fire occurred. Under these circumstances, we are of opinion that testimony tending to show that at the time the policy was written the agents of the insurance company knew that it was occupied as a Keeley institute was competent, and that the court below erred in withdrawing it from the consideration of the jury. The agents here were general agents, having power

to write policies. If they knew at the time the policy was written that the house was occupied as a Keeley cure establishment, and described it as a dwelling house, the insurance company would be estopped from setting up such misdescription in avoidance of the policy. "This principle does not admit oral testimony to vary or contradict that which is in writing, but it goes upon the idea that the writing offered in evidence was not the instrument of the party whose name was signed to it; that it was procured under such circumstances by the other side as estops that side from using or relying on its contents; not that it may be contradicted by oral testimony, but that it may be shown by such testimony that it cannot be lawfully used against the party whose name is signed to it." 1 May, Ins. § 144, quoting from American Leading Cases, where an application had been signed by the assured. In the same section an Iowa case is cited affirming the proposition that "an insurance company transacting business through an agent having authority to solicit, make out, and forward applications, to deliver policies when returned, and to collect and transmit premiums, is affected by the knowledge acquired by such agent when engaged in procuring an application, and bound by his acts done at such time with respect thereto." When an agent of the company, with full knowledge of the facts, makes out an application, it is conclusive upon the company. An omission in the description of the property by mistake of the agent in filling out the application afterward signed by the insured will not prejudice the latter. Parol evidence is admissible to show that the statements given to the agents were different from those in the application transcribed by him and sent to the company though the application was signed by the insured, not knowing its contents were different from the statements he had made to the agent. When the company's agent, knowing the circumstances (viz. an incumbered equitable title), filled in the application, "Fee Simple—No Incumbrances," and the assured signed it without reading, supposing it was all right, it was held that the company could not set up concealment or breach of warranty. Id. §§ 144b, 144c. "When the agent is aware of the facts relative to a risk before the contract is entered into, the insurer is charged with such knowledge, and is estopped from setting up an innocent mistake of the assured, either in setting forth the facts in the application or in omitting to state them." 2 Wood, Ins. § 426. In illustration of this proposition, an English case—In re Universal Non-Tariff Fire Ins. Co., L. R. 19 Eq. 485—is cited, wherein the policy described the buildings as built of brick and slated. In fact, one of the buildings was not slated, but the roof was covered with tar and felt when the insurance was effected, and the agent had knowledge thereof. It was held that the company was estopped from taking advantage of the misdescription, because it was a misdescription made by its own agent; and the text writer, after citing some cases in support of a contrary doctrine, states that it is so well settled as to be a legal rule that the agent's knowledge of the real condition and situation of a risk is imputable to the principal, and may be shown to defeat the effect of a warranty inconsistent therewith. Another case cited in same section is from Pennsylvania,—Insurance Co. v. Spencer, 53 Pa. St. 353. In

this case the insurance was upon a stock of barley, malt, and hops, with a condition in the policy that the risk should not be increased. The premises were used at the time and afterwards to distill whisky, which increased the risk. The agent of the company, having examined the premises before the risk was taken, knew that the machinery for distilling was then in the building. A loss having occurred, the defendant company set up in avoidance of the policy the increase of risk caused by the distilling on the premises. The court held that, if the agent knew, or ought to have known, from the examination made of the premises, that they would be used for the purposes of distilling, the company would be estopped from setting up such use in avoidance of its liability, and that the question of such knowledge was for the jury. In a New Hampshire case—Campbell v. Insurance Co., 37 N. H. 35—the applicant omitted to state the existence of a steam engine in the building, which, under the regulations of the company, avoided the policy; but, it appearing that the agent of the company knew of the existence of the steam engine in the building at the time the policy was written, the court held that the company was estopped from setting up such omission to defeat the policy. Joyce, the latest writer on the subject, states the principle substantially as above:

"So an insurance company is estopped from asserting the invalidity of its policy at the time it was issued for the violation of any of the conditions of such policy, if, at the time it was so issued, the fact of such violation was known to the company or its duly-authorized agent. * * * The knowledge of an agent authorized to issue policies may constitute knowledge of and estop the company, notwithstanding the policy provides that the agent may not waive its conditions." 1 Joyce, Ins. § 515.

"Where the company's agent, without authority from the applicant, fills out an application of his own motion, and, without inquiry, merely presenting it for signature, his representations, if false or incorrect, cannot conclude the insured. So where the agent answers the questions from his own knowledge as to the title and situation of the property, the company cannot avail itself of the fact that the building stood on leased ground, and, therefore, that the contract is void under a condition in the policy requiring a special agreement in writing in such case." Id. § 487.

This principle, which seems to have the sanction of all the writers on insurance, is consonant with sound reason. All of the business of insurance is done through agents, who are presumed to know and do know better than the community at large the requirements of their companies. A party seeking insurance must ordinarily depend upon the agent for the proper preparation of the requisite papers, and if he neither misrepresents nor conceals any essential fact, and the agent, having opportunities of knowing, acts upon his own knowledge, and fails to describe properly the premises insured, it would be an intolerable hardship that such party, who is without fault himself, should suffer from the omission or negligence of the company's agent, and that the company which has taken his money and issued to him a policy void from the beginning should be allowed to shelter itself under the letter of the contract, and the insured not be permitted to show the truth of the transaction. The general practice is for the party seeking insurance to make out his application, and this is considered a part of the policy. This was not required or done in the case under consideration. The plaintiff was not asked to describe the property, and it is not

claimed that he omitted to give any information, or that the misde-scription was his act. The word "dwelling" is not free from ambiguity. In a certain sense, any house in which people dwell might be considered a "dwelling." That a higher premium would be charged on a house where patients of a Keeley cure were entertained was a fact peculiarly within the knowledge of the insurance agents. It is not a matter of common knowledge, and the plaintiff has testified that he did not know it. The description was written by the company's agent. The testimony shows that the policy was made out after the plaintiff had left the city, and was never seen by him until after the fire. It is true that it was left with Mr. Carter, who was in a sense his agent, as well as the attorney for the Jacksons, and that any knowledge that Carter would obtain from inspection of the policy would be imputed to the plaintiff; but it does not seem to us that it would be any relaxation of the good and wholesome rules which require integrity and fair dealing and openness of conduct on the part of the insured, as well as upon the part of the insurers, to hold that the plaintiff was entitled to show by parol that the agents, at the time the policy was written, were acquainted with the use which the plaintiff was making of the premises insured, and, if so, that the company was estopped from setting up such use in avoidance of its liability.

Under the general principle of estoppel in pais, persons innocently induced to acquire rights in derogation of secret or undisclosed claims of those who induce such action are secure in the rights so acquired. A real owner is often precluded from disputing title when, by his acts, he allows it to appear that the real title is vested in the party making the sale. There can be no real distinction between such cases and those which would hold an insurance company estopped from setting up facts in avoidance of its contract when such facts were obvious, and were known to its agents, when the contract was made. That oral testimony may be properly offered to prove facts tending to create estoppels of this nature is well settled in numerous cases of the highest authority. In Insurance Co. v. Wilkinson, 13 Wall. 222, there was a suit upon a life insurance policy. It was not denied that the application upon which the policy was issued contained a representation of a matter material to the contract, that it was signed by the party, and that it was untrue, the applicant having signed a paper stating that the mother of the insured had died of fever at the age of 40, when in fact she had died of consumption at the age of 23. Testimony was offered and admitted that the plaintiff had said that he had no knowledge on this particular subject of inquiry, and the representation was made out by the insurer. The court held that it would be an act of bad faith and of the grossest injustice and dishonesty to avoid the policy because of this statement; and Mr. Justice Miller, with his accustomed force and clearness, states the grounds upon which oral testimony may be offered, not to contradict the written instrument, but to show that it cannot be lawfully used against him. This case is cited by Mr. Justice Bradley in Eames v. Insurance Co., 94 U. S. 621, a fire insurance case, where the agent, being acquainted with the exact facts, stated them inexactly, leading the applicant to sup-

pose that it was all right, the court holding that it would be great injustice to turn him out of court for this inexact method of statement. In Insurance Co. v. Mahone, 21 Wall. 152, the supreme court sustains the ruling of the court below as to the admissibility of parol testimony to show that the answer to a certain inquiry propounded by the insurance company's agent was different from that taken down by the agent and signed by the insured. True answers having been made in fact, the company was not permitted to set up as a warranty the answers put down by its agent, although signed by the assured. These cases were considered in Insurance Co. v. Fletcher, 117 U. S. 531, 6 Sup. Ct. 837, and distinguished, because in that case there was a limitation upon the power of the agent. There is no question in the case now under consideration of the scope of the agency, and much of the opinion in the case last cited has no application; but the court says, after distinguishing that from the other cases cited:

"Where such agents, not limited in their authority, undertake to prepare applications and take down answers, they will be deemed as acting for the companies. In such cases it may well be held that the description of the risk, though nominally proceeding from the assured, should be regarded as the act of the company."

In Insurance Co. v. Chamberlain, 132 U. S. 304, 10 Sup. Ct. 87, the insured, in answer to the question as to whether there was any other insurance, answered, "No other," and the company contended that it was discharged from liability, it being admitted on the trial that he had other insurance in co-operative companies. The court held that this answer did not preclude proof as to what kind of insurance the parties had in mind when that question was answered, his act in writing the answer alleged to be untrue being considered, under the circumstances, the act of the company.

As this contract was made in Virginia, the cases in that state should be considered. In Insurance Co. v. West, 76 Va. 575, Staples, J., citing Insurance Co. v. Wilkinson, 13 Wall. 222, says:

"In all this class of cases it has been further held that where the agent filling up the application is clothed with real or apparent authority to make a contract of insurance, the agent's knowledge of the real condition and situation of the risk is imputable to the principal, and estops the latter from setting up any warranty inconsistent therewith."

In Insurance Co. v. Stultz, 87 Va. 629, 13 S. E. 77, the court says:

"The man who asks insurance on his property is not aware of the necessity of disclosure which long experience in insurance has shown to the underwriter to be necessary, and to hold his policy void for not making disclosures of the importance of which he is not aware would be gross injustice."

And in the recent case of Insurance Co. v. Pankey, 91 Va. 259, 21 S. E. 487, the court, referring to the well-settled law in that state that an insurance company might waive conditions avoiding policies for increase of risk by change of occupancy, and thereby become estopped from setting up such conditions as a breach in an action for loss subsequently occurring, and that "such waiver need not be in writing, but may be by parol," says:

"Any acts, declarations, or course of dealing by the insurers, with the knowledge of the facts constituting a breach of a condition in the policy, recognizing

and treating the policy as still in force, and leading the assured to regard himself as still protected thereby, will amount to a waiver of the forfeiture by reason of such breach and estop the company from setting up the same as a defense when sued for a subsequent loss."

See, also, Insurance Co. v. Rodefer, 92 Va. 747, 24 S. E. 393; Insurance Co. v. Ward (Va.) 28 S. E. 209. For cases in other states illustrating the same principle, see Insurance Co. v. Olmstead, 21 Mich. 251; Dunbar v. Insurance Co., 72 Wis. 492, 40 N. W. 386; Short v. Insurance Co., 90 N. Y. 16; Insurance Co. v. Robison, 7 C. C. A. 468, 58 Fed. 723; Insurance Co. v. Clayton, 8 C. C. A. 213, 59 Fed. 559.

The question in all cases of this kind is whether the insurer was misled as to the risk by anything which the insurer did or omitted to do, and any testimony going to show that the agent was fully informed as to the risk, that he knew the facts concerning it, that he was not misled by any acts or omissions of the insured, would be pertinent to the issue, and, under the doctrine announced, such testimony was admissible. We are of opinion, therefore, that the court below erred in withdrawing from the jury the testimony as to the conversations had with the agents of the insurance company which was offered for the purpose of showing that the agents knew that the premises in question were occupied and used at the time the policy was written as a Keeley institute, and, as a new trial must be granted on that ground, it would not be proper to express any opinion as to the weight of that testimony. Its rejection was moved, not because of its insufficiency, but because of its illegality, in that "all such conversations were merged in the written contract"; and the learned counsel for the defendant has endeavored here to support its rejection on that ground. We are clearly of opinion that the testimony should have been admitted. There is room for a difference of opinion as to the weight of the testimony, and the learned judge below, on the hearing of the motion for a new trial, says, "without discussing, therefore, the legal points made, or the propriety or impropriety of excluding this evidence and assuming that evidence is in, the motion for a new trial is refused." Whether the agents of the company knew at the time the policy was written that the premises were being occupied as a Keeley cure establishment was a question of fact to be determined by a jury under proper instructions of the court. In determining that question, the jury were entitled to consider the conversations alleged to have been had with the agents at the time the insurance was effected, and all the circumstances surrounding the transaction, including the relationship of the agents to the parties and the conduct of the agents immediately after the fire. When a case proper for the determination of a jury has been submitted to it, with all the evidence legally pertaining thereto, there remains always in the court sufficient power to prevent injustice by setting aside the verdict, if it is manifestly due to ignorance, prejudice, or passion. The judgment of the court below is reversed, and the case remanded for a new trial.