𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

### NORFOLK FIRE INSURANCE CORPORATION v. WOOD.

March 14, 1912.

1. INSURANCE—*Additional Insurance—Knowledge of Agent—Forfeiture—Waiver—Estoppel—Parol Evidence.*—An insurance company which issues and delivers to an assured a policy containing a forfeiture clause for additional insurance, of which he is ignorant, with full knowledge (through its agent) of the amount of additional insurance intended to be taken by the assured on his property, and that he has contracted to give such insurance to the agents of other companies, thereby waives the conditions of its policy avoiding it if other insurance is procured without its consent endorsed on or annexed to its policy, and is estopped to set the same up, after loss. The knowledge of the agent is imputed to the company, whether communicated or not, unless it is shown that special limitations on the powers of the agent were known to the assured. Evidence to establish the estoppel is received as an exception to the " parol evidence rule."

Error to a judgment of the Circuit Court of Nottoway county in a proceeding by motion for a judgment. Judgment for the plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Peatross & Savage,* for the plaintiff in error.

*Caskie & Caskie,* for the defendant in error.

KEITH, P., delivered the opinion of the court.

Wood, the defendant in error, who was the owner of a building at Burkeville, then in course of construction, was approached by Jones, the Burkeville agent of the Norfolk Fire Insurance Corporation, who asked to be allowed to write a policy of insurance on the property for $7,500. This Wood refused to do, saying that he had promised other agents insurance on the building, but after the

other agents were satisfied he would give the agent of plaintiff in error a policy. Jones insisted on $7,500, saying that he was a local agent, and entitled to more insurance than outsiders; but Wood said that he could not fulfil his promise to other agents if he did this, but that he would give Jones $5,000, and a policy was written for that sum. Wood then called the attention of the agent to the fact that the premium was too large, and that the policy should be what is known as a "builder's risk," and this error was corrected.

The policy thus taken expired on November 12 at 12 o'clock, and on November 11 a Mr. Legg, the managing underwriter for the plaintiff in error, came to Burkeville for the purpose of inspecting the property, and he, in company with Wood and Jones, the agent, inspected the building. Legg stated that his company would like to carry $15,000 upon it, and later Jones saw Wood and tried to induce him to permit him to write $15,000 on the building, to which Wood replied that he would not give it all to one company, as he had promised other agents. Jones, the agent, then asked to be allowed to write $7,500, but Wood told him he could write $5,000 or nothing. On the next day, November 12, just about one hour before the first policy expired, Jones again saw Wood, and asked, "Have you agreed to let me control the full amount of insurance on that hotel building?" Wood replied, "No," whereupon Jones produced and delivered the policy now sued on. Wood put the policy in his pocket and went into the school-house, where he was teaching. The delivery and conversation took place during the recess of school. Wood did not unfold the policy, but looked at the face of it, and did not read or open it until after the fire.

The policy contained the following clause: "This entire policy, unless otherwise provided by agreement endorsed hereon or added hereto, shall be void if the insured has or shall hereafter make or procure any other contract of insurance, whether valid or not, on property covered in whole or in part by this policy."

At sundry times subsequent to November 12, and before the fire occurred, Wood took out other policies on the building, aggregating $6,500, making a total insurance, with the policy in this suit, of $11,500.

The property was destroyed by fire on February 2, 1910, with a total loss, and proof of loss was duly given, but the company refused to pay, upon the sole ground that the clause above quoted had been violated. Thereupon Wood brought suit, and when all of his evidence had been produced before the jury, the defendant, without introducing any testimony, demurred; whereupon the jury returned a verdict in favor of the plaintiff for $5,000, with interest from May 25, 1910, subject to the opinion of the court upon the demurrer. The court overruled the demurrer and entered judgment for the plaintiff, and the defendant company applied for and obtained a writ of error, which brings before us for consideration the rulings of the court upon the trial.

The plaintiff in error took several exceptions to the admissibility of evidence, to permitting the plaintiff to show that prior to the issuance of the policy in suit he had told the agent of the defendant that he intended to take additional insurance in other companies, that the agent had solicited as much insurance as $15,000 on the insured premises, and other evidence of like character, which the plaintiff in error objected to, because it tended to vary the terms of a written instrument, but which the court admitted upon the ground that it tended to establish a state of facts which estopped the defendant from claiming a forfeiture for breach of the condition of the policy against additional insurance. We shall consider the assignments of error as to the admissibility of testimony along with that with respect to the judgment upon the demurrer to the evidence, for they all involve the same general principle.

In *Insurance Co.* v. *Yates*, 28 Gratt. (69 Va.) 585, Judge Staples, after stating the familiar rule of evidence, that all previous verbal agreements must be taken to be merged in the written agreement of the parties, made for the purpose of embodying the terms of the contract, and designed to be the depositary and proof of their final intention, says: "The exceptions to this rule that are sanctioned by the courts are found in those cases in which the insured is misled by the assurances or declarations of the agent of the insurer, or where the latter seeks to take advantage of a forfeiture of his own creation, or where the insured has given a correct description of the property, which has not been followed

by the insurers or their agents in preparing the policy, or where the parties stand on unequal ground, and one of them uses his superior knowledge or influence to mislead the other as to the true import of the contract. * * * It must be conceded that many of these exceptions, if they can be so termed, are utterly irreconcilable with the rule itself, or any just principle upon which it is founded. In such cases it is said, however, the oral evidence is not offered to contradict the writing, but to show that the representation as it is written ought not to be used against the party, upon the ground of an equitable estoppel." Citing *Insurance Co.* v. *Kinnier's Adm'r*, 28 Gratt. (69 Va.) 88, and *Insurance Co.* v. *Weill & Ullman*, 28 Gratt. (69 Va.) 389.

*Fire Insurance Co.* v. *West*, 76 Va. 575, 44 Am. Rep. 177, fully supports *Insurance Co.* v. *Yates*, and re-inforces the doctrine there maintained by additional authorities.

In *Fire Insurance Co.* v. *Ward*, 95 Va. 231, 28 S. E. 209, it is said that facts relating to the risk, communicated to an agent of an insurance company before or at the time of issuing the policy in suit, bind the company, whether communicated to it by such agent or not, and that, notwithstanding the provision in an insurance policy which avoids the policy if there be other insurance on the property, unless it be made known to the company and endorsed on the policy or otherwise acknowledged in writing, if the existence of such other insurance was communicated to an agent of the company, the company is estopped to enforce the forfeiture, although the agent may have neglected to communicate his knowledge to the company, and the company was in ignorance of the fact at the time the policy was issued, unless the limitation upon the agent's powers was in some way brought home to the assured.

And in *Insurance Association* v. *Williams*, 95 Va. 248, 28 S. E. 214, it is held that "knowledge of facts material to the risk, communicated to the agent of an insurance company who fills out the application for the policy, which is subsequently delivered, is imputed to the company, whether communicated to it by its agent or not, unless it is shown that special limitations on the powers of the agent were known to the assured."

By these authorities we think it is abundantly established that

if insurance in other companies had existed at the time of the negotiations which led to the execution and delivery of the policy in suit, and the fact that there was such other insurance upon the property had been, before the issuing of this policy, communicated to Jones, the agent, and with that knowledge he had received the premium and issued the policy, the company would have been affected by his knowledge of that fact, and been estopped to insist upon the forfeiture.

In the case under consideration there was no other policy in actual existence, but it appears that the plaintiff in error was willing to write a policy for $15,000 upon the property. There was, then, no excessive insurance. It further appears that it applied for and insisted upon being permitted to write a policy larger than the one in suit; that it was informed, through its agent, that Wood declined to give them more than $5,000 of insurance, upon the ground that he had entered into agreements with other insurance companies to permit them to write policies upon his building. Almost at the instant when the policy in suit was delivered, the agent renewed the request, and was again informed that he could write $5,000 or nothing, because of the agreement which Wood had entered into with other companies, though other policies had not in point of fact been issued. Thereupon, with this knowledge, the premium was received and the policy was issued, and, without being read, as was also known to the agent, was put by Wood into his pocket, and he went about his duties as school-master.

It would be a somewhat singular result if the policy should be held good, notwithstanding the clause of forfeiture in case of concurrent insurance, if the concurrent policies had actually been issued with the knowledge of the insurance company through its agent, but that the forfeiture should prevail if, in reliance upon the act of the company through its agent in receiving the premium and issuing the policy, with full knowledge of his purpose, Wood should take out other insurance, in pursuance of what he conceived to be binding agreements with other companies to that effect.

We have reached, then, this point, that the authorities establish that the policy under consideration would not have been defeated

by the actual existence of other policies, because the insurance company would have been estopped, by its knowledge of the facts, to insist upon the forfeiture; but it is insisted by the plaintiff in error that the estoppel did not arise, although the premium was received and the policy issued, with full knowledge that the insured intended to do, and had actually agreed to do, that which, if executed, would have tied the hands of the company. In both instances the result is the same. As a moral question, both seem to involve identical propositions, and there is abundance of authority in support of both.

In *Kitchen* v. *Insurance Co.*, 57 Mich. 135, 23 N. W. 16, 58 A. M. Rep. 344, where an applicant for fire insurance told the agent that he meant to obtain further insurance in other companies, and asked him so to notify the company he represented. The agent replied that it would be needless to do so until such insurance was obtained. The applicant had no notice of any limitations upon the agent's authority. *Held*, that the company was estopped from denying liability on the ground that its policies forbade additional insurance without its consent.

In *Erb* v. *Insurance Co.*, 99 Ia. 727, 69 N. W. 261, it was held that a provision of a policy of insurance against additional insurance was waived where the agent of the insurer, whose knowledge is imputable to it, knows at the time the policy is issued that an existing policy, issued by another company, is about to be renewed.

In *Fitchner* v. *Fidelity Mutual Fire Ins. Asso.*, 103 Ia. 277, 72 N. W. 570, it was held that the insurance company is charged with the knowledge of its soliciting agent that the insured desired and was placing $12,000 of concurrent insurance on the merchandise.

In *Independent School Dist. of Doon* v. *Ins. Co.*, 113 Ia. 65, 84 N. W. 956, where an insurance company issued a policy on certain property, while its agent who procured the risk knew of a certain other policy to be obtained on the same property, it consented to the additional insurance, and its policy was not void in consequence thereof, since its agent's knowledge was the knowledge of the company.

See *St. Paul Fire and Marine Ins. Co.* v. *Wells*, 89 Ill. 82.

In *Fireman's Ins. Co.* v. *Norwood*, (C. C. A.) 69 Fed. 71, the general agent of certain insurance companies called upon the plaintiff and asked to be allowed to place some of the insurance on plaintiff's stock. He inquired how much insurance plaintiff intended to carry, and plaintiff told him $40,000, and subsequently authorized him to place $10,000 of such insurance. The general agent afterwards delivered to plaintiff policies, including two of $2,500 each, to which were attached riders allowing other insurance to the amount of $27,500, and both contained the condition that if the assured should have or afterwards effect other insurance, without the written consent of the company, the policy should be void, and also provided that only certain specified officials should have authority to waive or modify the conditions of the policy. When plaintiff received the policies he examined them to see that the amounts were correct, but, relying on his conversation with the agent, did not examine them further, and placed them in his safe. It was held "that, by delivering the policies with knowledge, through their agent, of the amount of insurance intended to be taken, the companies waived the condition as to other insurance, and were estopped to set the same up after a loss, plaintiff having a right to rely on such knowledge of the agent."

See *McElroy* v. *British American Co.*, (C. C. A.) 94 Fed. 990; *Palatine Ins. Co.* v. *McElroy*, (C. C. A.) 100 Fed. 391; *Queen Ins. Co.* v. *Union Bank*, (C. C. A.) 111 Fed. 697.

What we have said and the authorities we have discussed in no way conflict with the opinion of this court in *Metropolitan Life Ins. Co.* v. *Hall*, 104 Va. 572, 52 S. E. 345, where it was held, in an action to recover on a life insurance policy, that "a contemporaneous parol agreement or understanding between the agent of an insurance company who solicits the insurance and the insured, as to the time and place of paying the premiums, different from that stated in the policy, cannot be given in evidence, as it varies or contradicts the terms of the written contract of the parties." The effort of the insured there was virtually to introduce into the policy of insurance a new term with respect to the authority of the agent, doing away with the limitation which the company had imposed upon the agent's authority, which it was held

could not be done, unless the company, by a course of business or otherwise, had waived the limitation on the agent's power. In other words, that case in substance reaffirms the law as stated by Judge Staples in *Insurance Co.* v. *Yates, supra,* which already appears in this opinion, and need not be repeated.

This case is considered as upon a demurrer to the evidence, and, without again discussing the rule governing courts in such cases, we are of opinion that there is no error in the judgment complained of, which is affirmed.

*Affirmed.*