## Staunton

MASSACHUSETTS BONDING AND INSURANCE COMPANY v.
PIEDMONT SERVICE STATION, INC.

September 19, 1935.

Present, Campbell, C. J., and Holt, Hudgins, Browning,
Chinn and Eggleston, JJ.

The opinion states the case.

*Rixey & Rixey,* for the plaintiff in error.

*William A. Stuart* and *Robert L. Pennington,* for the defendant in error.

EGGLESTON, J., delivered the opinion of the court.

Piedmont Service Station, Inc., suing for the benefit of itself and A. B. Whiteaker, Jr., as their interests may appear, recovered a judgment against Massachusetts Bonding and Insurance Company, for the sum of $1,565.75 with interest and costs, in an action at law on an automobile liability policy. That judgment is here for review on a writ of error granted to the Insurance Company.

In July, 1932, the Piedmont Service Station, Inc., of Bristol, Virginia, owned two Chevrolet trucks, one a four cylinder 1927 model, motor number 3,768,741, serial number 1AA96269, and the other a six cylinder 1929 model, motor number 600,390, serial number 9A38687. For the sake of brevity these will be referred to as the 1927 truck and the 1929 truck, respectively.

The Massachusetts Bonding and Insurance Company was represented at Bristol by The Bristol Insurance Agency, Inc., of which J. W. Wilson was the vice-president. Wilson had previously solicited the Piedmont Service Station, Inc., for insurance on some of its equipment. In the latter part of July, 1932, pursuant to a call, Wilson went to the Service Station and was advised by one of the officers that the Piedmont Service Station, Inc., had decided to give him (Wilson) a policy on its 1929 Chevrolet truck. The testimony of Wilson himself is in accord with that of the officers and employees of the Service Station that when Wilson called to discuss the matter the 1929 truck was out in front of the service station, and was pointed out to him as the one to be insured. In fact, Wilson was already familiar with the truck as he was a

customer of the service station. The 1927 truck was then out of use, laid up in a garage, and was not even discussed or considered for insurance at that time.

While in the office at the service station Wilson picked up a policy which had been submitted by another insurance agency for renewal but which the service station had decided not to accept. Wilson, thinking that this policy referred to and contained a proper description of the 1929 truck, which it was the intention of the parties to insure, obtained therefrom the description, including the serial number, motor number, etc., and issued and delivered to the Piedmont Service Station, Inc., the policy in question.

It turned out, however, that the policy from which Wilson had obtained the description covered the 1927 and not the 1929 truck. Hence the policy which was issued and delivered to the Piedmont Service Station, Inc., covered the 1927 model, four cylinder, Chevrolet truck, described by its appropriate serial and motor number, instead of the 1929 model, six cylinder, Chevrolet truck.

Wilson testified: "I didn't check as to the year number, because we don't go into that, especially, because the year doesn't have much to do with it, and it happened *his* policy covered on a 1927 truck, which they also owned, but which was out of service and which I knew was out of service, because they had told me that it was out of service."

The policy was dated July 20, 1932, and covered the truck for the twelve months' period beginning July 27, 1932. In consideration of the premium of $65.00 the Insurance Company agreed, among other things, to pay the loss from liability imposed by law upon the service station for damages on account of bodily injuries to any person, not in excess of $5,000.00, and further agreed to pay all costs and expenses in connection with any suit which might be brought against the assured.

Sometime during the fall of 1932,—the evidence does not show just when,—the officers of the Piedmont Service Station, Inc., found it necessary to repair the 1929 truck

and to use in its stead the 1927 truck, which up to that time had still been laid up in the garage. One of the employees of the service station then requested Wilson to obtain a transfer of the coverage from the 1929 to the 1927 truck. In the meantime Wilson had discontinued his representation of the Massachusetts Bonding and Insurance Company, but forwarded the request for a transfer to the Atlanta office of the insurance company, which replied that the policy, as written, already covered the 1927 truck and hence no transfer was necessary. This information Wilson relayed to the employees of the service station, and no change was at that time made in the policy.

In December, 1932, The Bristol Insurance Agency, Inc., was succeeded by the Lyon-Hite Agency. In January, 1933, the 1929 truck was again laid up for repairs and the 1927 truck was withdrawn from storage and put in temporary use. This information was conveyed to Wilson with the request that he make the necessary transfer in the policy to cover the 1927 truck thus temporarily put in service. In attempting to do this Wilson issued a transfer dated January 11, 1933, in which it was stated that the policy should cover a "1927 Chevrolet roadster pickup, motor No. 346,709" truck, and should cease to cover the "1927 Chevrolet pickup, motor No. 1AA96269, No. 3,768,-741" truck.

By May, 1933, the 1929 truck had been repaired and was again put in use, while the 1927 substitute truck was withdrawn from service. Thereupon the bookkeeper of the service station notified the Lyon-Hite Agency of this fact and requested a transfer of the policy *"from the 1927 model back to the 1929 model."* Instead of complying with this request the local agent of the insurance company issued an erroneous transfer, dated May 15, 1933, wherein it was stated that the policy should cover a "1927 Chevrolet pickup roadster, motor No. 1AA96269, No. 3,-768,741" truck, and should cease to cover the "1927 Chevrolet roadster pickup No. 346,709" truck.

It appears from the undisputed testimony that at the

time these transfers were made there was in existence no 1927 Chevrolet roadster pickup truck with the motor number 346,709, as described in the riders attached to the policy, since all Chevrolet trucks of that year carried serial numbers in the three million class.

The evidence is undisputed that none of the officers or employees of the Piedmont Service Station, Inc., had anything whatsoever to do with the furnishing of the erroneous description of this truck to the local agent of the insurance company. Apparently, when the employee of the service station requested that the policy be transferred "back to the 1929 model" truck, the local agent of the insurance company, assuming that the description of the truck in the policy originally issued was correct, adopted this description for the purpose of the last transfer.

However, the effect of this last transfer was to have the policy cover the 1927 truck, which had again been placed in storage and was not thereafter operated, and to leave unprotected the 1929 truck which had thus been restored to service.

This error went undiscovered until June 15, 1933, when one A. B. Whiteaker, Jr., was struck and injured by the 1929 truck. Upon the report of the accident to the insurance company it denied liability on the ground that its policy covered the 1927 truck and not the 1929 truck which was involved in the accident.

Thereafter Whiteaker brought suit in the Circuit Court of Washington county against Piedmont Service Station, Inc., for damages for the personal injuries sustained by him. Notice of this suit was promptly given to the insurance company, which again denied liability on the policy, and refused to defend the suit. At the trial of the case Whiteaker obtained a judgment against the service station for the sum of $1,000.00 with interest and cost, which judgment the insurance company likewise declined to pay.

Thereupon this suit was brought by the Piedmont Serv-

ice Station, Inc., suing for the benefit of itself and A. B. Whiteaker, Jr., as their interests may appear, to recover the amount of the said judgment, with costs, and the attorneys' fees and expenses incurred by the service station in defense of the said suit, amounting, in all, to $1,565.75.

There is no claim that there was any difference in the risk on the two trucks. In fact, the agent testified that the company would have insured either for exactly the same premium. Whether the policy covered the 1927 or the 1929 truck was, therefore, not material to the risk.

In its assignments of error the insurance company asserts the defense that the policy, as written, was the contract between the parties; that it did not cover the 1929 truck which was involved in the accident; that the trial court erred in allowing the introduction of parol evidence to show that the parties intended that the policy should cover the 1929 truck, and that the insertion therein of the description of the 1927 truck was through the mistake of the local agent of the insurance company.

■ It is clear that the failure of the policy to cover the 1929 truck, in the first instance, was due to the mistake of Wilson, the local agent for the insurance company, in preparing the policy. It is likewise true that the local agent for the insurance company failed to carry out the instructions of the service station and failed to transfer the policy back to the 1929 truck after it had been restored to service in May, 1933. These mistakes of the local agent were the mistakes of the insurance company. What the agent knew, the insurance company itself knew, and what the agent failed to do, the company failed to do. *Royal Indemnity Co.* v. *Hook,* 155 Va. 956, 965, 157 S. E. 414. Therefore, to uphold the contention of the insurance company would be to allow it to take advantage of its own mistake.

Furthermore, if this defense is sustained, we would have this result: While the 1929 truck was in operation the policy covered the 1927 truck. While the service station's 1927 truck was in operation from January 11 to

May 15, 1933, the policy covered a different 1927 truck, one not even in existence because of a fictitious serial number. After the 1929 truck was restored to service on May 15, 1933, the policy covered the 1927 truck which had been withdrawn from service. Therefore, during the whole period covered by the policy the Piedmont Service Station, Inc., had neither of its trucks protected, although it had paid a premium therefor, and although such lack of coverage was due solely to the mistake of the insurance company. Needless to say such a result cannot be sanctioned in a court of justice.

▇ This court has repeatedly held that an insurance company is estopped to invoke the parol evidence rule to enable it to thus take advantage of like mistakes of its agents.

In *Norfolk Fire Insurance Corp.* v. *Wood,* 113 Va. 310, 312, 74 S. E. 186, 187, 39 L. R. A. (N. S.) 1020, Judge Keith said:

"In *Southern Mutual Insurance Co.* v. *Yates,* 28 Gratt. (69 Va.) 585, Judge Staples, after stating the familiar rule of evidence, that all previous verbal agreements must be taken to be merged in the written agreement of the parties, made for the purpose of embodying the terms of the contract, and designed to be the depositary and proof of their final intention, says: 'The exceptions to this rule that are sanctioned by the courts are found in those cases in which the insured is misled by the assurances or declarations of the agent of the insurer, or where the latter seeks to take advantage of a forfeiture of his own creation, or where the insured has given a correct description of the property, which has not been followed by the insurers or their agents in preparing the policy, or where the parties stand on unequal ground, and one of them uses his superior knowledge or influence to mislead the other as to the true import of the contract. * * * It must be conceded that many of these exceptions, if they can be so termed, are utterly irreconcilable with the rule itself, or any just principle upon which it is founded. In such cases it is

said, however, the oral evidence is not offered to contradict the writing, but to show that the representation as it is written ought not to be used against the party, upon the ground of an equitable estoppel.' "

See also, *Lynchburg Fire Insurance Co.* v. *West,* 76 Va. 575, 578, 44 Am. Rep. 177; *Virginia Fire & Marine Insurance Co.* v. *Goode,* 95 Va. 762, 771, 30 S. E. 370; *Virginia Fire & Marine Insurance Co.* v. *Richmond Mica Co.,* 102 Va. 429, 432, 46 S. E. 463, 102 Am. St. Rep. 846; *North River Insurance Co.* v. *Lewis,* 137 Va. 322, 326, 119 S. E. 43.

In *Glover* v. *National Fire Insurance Co.* (C. C. A. 4), 85 Fed. 125, it was held that the rule excluding parol evidence to vary or contradict a written contract does not authorize the exclusion of the evidence by an insured that a misdescription in the policy relied on as a defense was made by the insurer's agent who knew all the facts, when such evidence is offered to show an estoppel.

Nor can we agree with the argument of the learned counsel for the insurance company that, in any event, parol evidence of the mistake in the description of the truck is not admissible in the present action at law, but is admissible only in a suit in equity brought for the specific purpose of reforming the policy.

Parol evidence of the correct description of the truck was admitted because the insurance company was estopped by the knowledge and mistake of its agent from asserting the misdescription as a defense. It is well settled that the principles of equitable estoppel are applied in actions at law as well as in suits in equity.

In *Hoge* v. *Fidelity Loan & Trust Co.,* 103 Va. 1, 11, 48 S. E. 494, 495, this court, speaking through Judge Harrison, said:

"That the defense of equitable estoppel is as available at common law as in equity is well settled. *Dickerson* v. *Colgrove,* 100 U. S. 578, 25 L. Ed. 618; *Kirk* v. *Hamilton,* 102 U. S. 68, 26 L. Ed. 79; *Barnard* v. *German-American Seminary,* 49 Mich. 444, 13 N. W. 811; *Dickerson* v. *Board of Commissioners,* 6 Ind. 128, 63 Am. Dec. 373.

"In *Kirk* v. *Hamilton, supra,* Mr. Justice Harlan, in speaking of equitable estoppels, says: 'The remedy in such cases lay originally in an application to chancery, and no redress could be had in a merely legal tribunal, except under rare and exceptional circumstances. But the common law has been enlarged and enriched under the principles and maxims of equity which are constantly applied at this day in this country, and in England. The doctrine of equitable estoppel is, as its name indicates, derived chiefly, if not wholly, from courts of equity. * * * There would seem to be no reason why its application should be restricted in courts of law. * * * Whatever may be the wisdom of the change through which the law has encroached on the jurisdiction of chancery, it has now gone too far to be confined within any limits short of the whole field of jurisprudence. This view is maintained by the main current of decisions.' "

See also, *Camp Manufacturing Co.* v. *Green,* 129 Va. 360, 372, 106 S. E. 394; *Tuggle* v. *Sutherland,* 98 W. Va. 540, 127 S. E. 384, 385; 21 Corpus Juris, page 1118, section 121.

 It follows, therefore, that where, as in the case at bar, the insurance company is estopped to invoke the parol evidence rule to prevent the showing of the true description of the property intended to be insured, it is not necessary that the policy holder proceed by an equity suit for a reformation of the policy in order to obtain the benefit of this estoppel. He may recover in an action at law on the policy as if it had contained the proper description.

Although this court has not spoken on the precise point, it has in numerous cases applied the principle. We shall refer to only a few. *Lynchburg Fire Insurance Co.* v. *West,* 76 Va. 575, 578, 44 Am. Rep. 177; *Virginia Fire & Marine Insurance Co.* v. *Goode,* 95 Va. 762, 771, 30 S. E. 370; *Virginia Fire & Marine Insurance Co.* v. *Richmond Mica Co.,* 102 Va. 429, 432, 46 S. E. 463, 102 Am. St. Rep. 846; *Norfolk Fire Insurance Corp.* v. *Wood,* 113 Va. 310, 312, 74 S. E. 186, 39 L. R. A. (N. S.) 1020; *North River In-*

*surance Co.* v. *Lewis,* 137 Va. 322, 326, 119 S. E. 43; *Royal Indemnity Co.* v. *Hook,* 155 Va. 956, 157 S. E. 414, were all actions at law on insurance policies wherein parol evidence under the above principles was admitted to show the true intention of the parties.

The matter has frequently been considered by other courts, and while they are not in accord we believe the weight of authority is in favor of the doctrine that a reformation of the policy is not necessary.

In *Litto* v. *Public Fire Insurance Co.,* 109 Pa. Super. 195, 167 A. 603, 604, the principle is thus stated:

"In the present case, the mistake of the agent, who was acting for the company and who countersigned the policy, was, in law, that of the company, and it does not lie in its mouth to claim that it has escaped liability by reason of the error of its agent. No person or company should profit by his or its own mistake, and if the location of personal property is misdescribed by insurer's agent when, as in this case, the proper information has been given to him, the insured, without asking for reformation of the policy, may, in an action recover for his loss, if he can convince the jury that such is the case."

To the same effect see *Deitz* v. *Providence-Washington Insurance Co.,* 31 W. Va. 851, 8 S. E. 616, 13 Am. St. Rep. 909; *DePaola* v. *National Insurance Co.,* 38 R. I. 126, 94 A. 700; *Mahler* v. *Milwaukee Mechanics' Insurance Co.,* 205 N. C. 692, 172 S. E. 204; *Williams* v. *Pacific States Fire Insurance Co.,* 120 Or. 1, 251 Pac. 258; *German-American Insurance Co.* v. *Hyman,* 42 Colo. 156, 94 Pac. 27, 16 L. R. A. (N. S.) 77; *Lumbermen's Mutual Insurance Co.* v. *Bell,* 166 Ill. 400, 45 N. E. 130, 57 Am. St. Rep. 140; *Carey* v. *Home Insurance Co.,* 97 Iowa 619, 66 N. W. 920; *Smith* v. *Commonwealth Insurance Co.* 49 Wis. 322, 5 N. W. 804; 66 A. L. R. page 767, note; 26 C. J. page 107.

But even were it necessary that the plaintiff have the aid of a court of equity in order to do complete justice to its cause, this would not require a dismissal or retrial of the present suit. This court has ample power under

Code section 6084 to remand the cause to the court below with the direction that the plaintiff be allowed to amend its pleadings to conform to the equity practice and the evidence already taken, and have a decree for the amount due it. *Carle* v. *Corhan,* 127 Va. 223, 103 S. E. 699.

However, such a circuitous route to justice is not necessary, and for the reasons above stated, the judgment should be affirmed.

*Affirmed.*